(No. 3302—

HAROLD GLICK, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 15, 1939.*

REGINALD C. HARMON, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

This claim was filed July 21, 1938, seeking an award of $1,800.00, under the Workmen's Compensation Act for the loss by claimant of the use of his right eye.

From June 8, 1935 to the date of filing of the claim, claimant was a regular employee of respondent at the University of Illinois where he was classified as a certified electrician. He had previously been employed at irregular intervals at the University since October, 1920.

On November 1, 1937 at about 11:30 A. M. claimant was engaged in taking down some wire which held curtains on a temporary stage at the skating rink at the University of Illinois. While standing on a ladder to cut the wire, one end flew back striking him in the right eye. Immediate notice was given to his employer and he was furnished hospital and medical service to the amount of $477.40, which was paid by respondent.

Dr. J. Howard Beard testified that he examined claimant on the day of the accident and repeatedly thereafter, and that from the standpoint of industrial vision claimant's eye is a total loss.

Dr. Hanby L. Ford, an Eye, Ear, Nose and Throat Specialist, located in Champaign, Illinois, testified that he performed an operation on claimant's eye on November 9, 1937 and removed the lens of the eye; that on January 7, 1938 he performed a discission on the eye and on February 3, 1938, a subsequent discission; that from an industrial visional efficiency standpoint a one-hundred (100) per cent loss has been sustained by claimant to the eye in question and this condition is permanent.

Claimant testified that in standing before a window he could distinguish between light and dark but can see no objects with the right eye.

Following the accident claimant resumed work on January 17, 1938 and continued through February 2, 1938. He was then forced by his injury and the surgical care of the eye to discontinue work until March 21, 1938, from which date he worked steadily until the filing of his complaint. He lost eighty-seven and one-half (87½) days of work and he received pay in the sum of Two Hundred Fifty-nine and 48/100 ($259.48) Dollars. He prays an award for specific total loss of use of the right eye under the terms of the Workmen's Compensation Act, in the sum of One Thousand Eight Hundred ($1,800.00) Dollars, and represents that the payment of Two Hundred Fifty-nine and 48/100 ($259.48) Dollars was for thirty-one (31) days, leaving temporary total compensation due him for fifty-six and one-half (56½) days.

The Attorney General contends that under a proper construction of the language of the Supreme Court in the case of *Western Cartridge Co.* vs. *Ind. Comm.*, 357 Ill. 29, claimant would not be entitled to temporary total disability payment for the full period of eighty-seven and one-half (87½) days of work which he lost, because he returned to work on January 17, 1938, and that the later period of absence from work cannot be counted as a period of temporary total incapacity, under the theory that any disability after his return to work must be classified as either partial or total permanent disability and not as a part of his temporary disability; that the period of temporary total incapacity is that temporary period immediately after the accident, during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. That such time may be described as the period of the healing process.

The court agrees with counsel for claimant that the latter should not be denied any part of the temporary total disability that is due him for the period of his enforced inability to work, by reason of the fact that he attempted to work during the periods between his operations. Any other interpretation of the law as it applies to the facts in this case would tend to discourage an injured employee from going back to work, as he would be discouraged by the fear of denial

of the right of recovery in the event that he was unable to continue to work permanently.

Claimant had been employed by respondent for more than one year prior to the accident and his earnings were One Hundred Eighty ($180.00) Dollars per month. He had a wife but no children under the age of sixteen (16) years.

The amount of compensation which should be payable to the employee for an injury not resulting in death, is, under the provisions of *Section 8 (b)* of the *Act,* limited to Fifteen ($15.00) Dollars per week where there is no child under the age of sixteen (16) years at the time.

His period of temporary total disability was apparently fourteen (14) weeks three and one-half (3½) days, for which he would be entitled to Two Hundred Eighteen ($218.00) Dollars. As he was paid Two Hundred Fifty-nine and 48/100 ($259.48) Dollars, there has been an overpayment to him of Forty-one and 48/100 ($41.48) Dollars.

"The amount of overpayment for temporary total disability is allowable as a credit to the employer when called upon to pay specific loss for partial or total permanent disability."

> *Black* vs. *State*, No. 3108, Court of Claims Opinion, rendered May 10, 1938;
>
> *Johnson* vs. *State*, No. 2906, Court of Claims Opinion, rendered November 16, 1938.

"The amount of compensation which shall be paid to the employee for an injury not resulting in death shall be:

"For the loss of the sight of an eye, or for the permanent and complete loss of its use, fifty percentum of the average weekly wage during one hundred and twenty weeks."

> *Section 8 (e-16), Workmen's Compensation Act.*

Under the facts appearing herein an award is hereby approved in favor of claimant for specific loss of use of his right eye, in the sum of One Thousand Eight Hundred ($1,800.00) Dollars, minus Forty-one and 48/100 ($41.48) Dollars, or One Thousand Seven Hundred Fifty-eight and 52/100 ($1,758.52) Dollars.

This award would be payable at the rate of Fifteen ($15.00) Dollars per week, but payment for seventy-one (71) weeks has accrued to March 13, 1939, making the sum of One Thousand Sixty-five ($1,065.00) Dollars payable at the present time, the balance of Six Hundred Ninety-three and 52/100 ($693.52) Dollars is payable in forty-six (46) weekly amounts of Fifteen ($15.00) Dollars each, commencing March 20, 1939, and one final payment of Three and 52/100 ($3.52) Dollars.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," Approved July 3, 1938 (Sess. Laws 1938 p. 83), and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the General Revenue Fund in the manner provided for in such act.