(No. 18176.—)

THE CHICAGO CIRCULAR ADVERTISING SERVICE, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES HUNTER, Defendant in Error.)

*Opinion filed October 25, 1928.*

SCHOEN & GREEN, for plaintiff in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On February 22, 1924, while in the employ of plaintiff in error, James Hunter, defendant in error, sustained an accidental injury by slipping on the ice and snow on a sidewalk in the city of Chicago, and as a result thereof suffered a fracture of his left leg a few inches above the ankle. On May 25, 1925, he filed with the Industrial Commission his application for adjustment of claim for compensation. The case was heard before an arbitrator on August 14, 1925. The arbitrator entered an award in favor of the employee for $7.50 a week for 64-6/7 weeks for temporary total incapacity and $7.50 a week for 62½ weeks for permanent and complete loss of fifty per cent of the use of the left foot. On review before the Industrial Commission on petition of the employer the case was submitted on the record made before the arbitrator, and the decision of the arbitrator was sustained. On *certiorari* proceedings the superior court of Cook county entered an order confirming the award. A writ of error has been awarded by this court for a review of the record.

On the hearing before the arbitrator the following stipulations were entered into by plaintiff in error and defendant in error: Defendant in error's average weekly wage before his injury was $15; that he had no children under sixteen years of age; that no compensation had been paid to him for his alleged injury and that no medical services had been furnished to him by plaintiff in error.

Plaintiff in error contends in this court that under the Compensation act it cannot be held to be operating under that act in its employment of defendant in error unless it was so operating by virtue of sub-section 3 of section 3 of the act, and that the evidence in the record shows clearly that it was not operating under the provisions of sub-section 3. It further contends that no demand or claim for

compensation was made by defendant in error, and that if such demand or claim had been proved, the evidence in the record does not sustain the award of compensation for temporary total incapacity.

Only two witnesses testified before the arbitrator—James Hunter for himself, and George P. Jensen, president and general manager of plaintiff in error. There is no substantial difference between these two witnesses upon any matters concerning which they both testified. There is no conflict in their evidence. The substance of their evidence, including their cross-examination, is the following:

James Hunter was born in Belfast, Ireland. He came to this country when he was six months old. He is a laborer and fifty-two years of age. He went to work for plaintiff in error about a year before he testified before the arbitrator. He did not work for it steadily and began work about three months or more before he was injured. When injured he was distributing circulars for his employer while traveling on foot from house to house in Chicago. There was ice on the pavement and snow on the ice. As he was traveling and delivering the circulars his foot slipped and caused him to fall on the sidewalk at Thirty-first street and Homan avenue. He did not know at first how severely he had injured his leg. The foreman of his employer and several others of his men were with Hunter when he was injured and they helped him to arise. He undertook to walk but could not do so. The foreman saw that he was hurt pretty badly, and said: "Just take it easy; don't try to follow us." Later, Hunter told the foreman that he ought to go and see a doctor. The foreman told him to take a street car to the county hospital—to go to the conductor and ask him and he would tell him how to go to the hospital. He went to the county hospital on a car, where they examined his foot and informed him that he had a fracture—a Pott's fracture two or three inches above the ankle. His foot was kept in a plaster cast a few days over two months.

He was in the county hospital three or four days and was then transferred to Oak Forest, where he remained for a year and three months on account of his injury. His leg was very much swollen and was very painful during the first six months that he was at Oak Forest. They put liniment on his leg, and that is about all they did for it. He was not treated by a physician while at Oak Forest. The nurses sometimes put liniment on his foot and manipulated it and rubbed it. A few weeks before he left Oak Forest he was able to walk a little bit, but it hurt him to do so. He has done no work since his injury and hasn't been able to work. He could work sitting down if he had some writing to do. He writes a very good hand and believes he could do some form of light work. He saw a small auto truck that his employer was using to take circulars to the places where he and his associates were to begin delivering them. He and his associates sometimes got circulars from dry goods stores and other customers of his employer and then delivered the circulars on foot. He did not know whether the truck belonged to his employer. He never observed any automobile that belonged to his employer. On the morning that he was injured he received the circulars that he was distributing when injured from some store, and he had been working about an hour or more distributing the circulars when he was injured. He was never informed by either the manager or foreman that it was his duty, in working for his employer, to use the truck in making deliveries, and there is no evidence in the record that he did so use it. The positive evidence of Jensen is that the company did not on the day of Hunter's injury, or within three months preceding that date, own and operate an automobile truck in its business. The inspector of the company did operate a Ford coupe for the use of its inspector. Hunter was not the inspector, and no one other than the inspector was authorized to use the car, and the inspector had no authority to use the car for conveying hand-bills, circulars or other

advertising matter in making deliveries. Hunter and all of his associates carried the circulars in cloth bags for distribution and delivered them on foot to housewives at their residences. They distributed no circulars in bulk to factory buildings or other places.

No claim or demand was ever made on the company for any compensation by Hunter and no notice of such claim was had by it, so far as the evidence shows. The inference to be drawn from the evidence of Hunter is that there was no such demand made. He expressly testified that after the accident he never went to the company's office and has not done so "up to this day," and that he never has written the company any letters. He does not expressly state, however, that he did not make any claim or demand for compensation. Section 3 of the Workmen's Compensation act provides that that act shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees engaged in any department of the enterprises or businesses which are there declared to be extra-hazardous. None of the various enterprises or businesses declared in that section to be extra-hazardous are made applicable by the facts disclosed in the record. The hazardous employment therein mentioned that is most nearly applicable to the facts in this case is the one mentioned in sub-section 3 of section 3, as contended by plaintiff in error. The hazardous employment therein mentioned is "carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horse-drawn or motor-driven vehicle where the employer employs more than three employees in the enterprise or business." (Smith's Stat. 1925, p. 1265.) The facts in the record and the provisions of that sub-section make it so clear that plaintiff in error is not liable thereunder that discussion of that question is unnecessary.

Section 1 of the Compensation act provides that an employer in this State who does not come within the classes enumerated by section 3 of the act may elect to provide and pay compensation for accidental injury sustained by any employee arising out of and in the course of the employment according to the provisions of the act and thereby relieve himself from any liability for the recovery of damages, except in cases where the employee has withdrawn from the operation of the act by filing a proper written notice of withdrawal with the Industrial Commission. The election by the employer to provide and pay compensation under section 1 will also be made by the employer filing proper notice of such election with the Industrial Commission. The evidence in this case does not establish the fact that there has been any election by the employer to pay compensation under the act and does not establish that both parties to this proceeding are bound by the act by election or otherwise. The Industrial Commission is therefore not shown to have jurisdiction of this proceeding. This court has laid down the law in a number of cases that the Industrial Commission has no jurisdiction to apply the act to persons or corporations who are not subject to its provisions or to an accident not within its provisions, and that the evidence in the record should at all times be reviewed by this court to determine such jurisdictional question. (*Hahnemann Hospital* v. *Industrial Board,* 282 Ill. 316; *Thede Bros.* v. *Industrial Com.* 285 id. 483; *Paul* v. *Industrial Com.* 288 id. 532; *Ellsworth* v. *Industrial Com.* 290 id. 514.) While the Compensation act, at the time the decisions just cited were rendered, was different in its provisions from the present act, still, they are applicable to the present statute when the evidence does not show that the parties are automatically bound by section 3 of the act, and the jurisdiction of the Industrial Commission depends upon an election by the parties to become bound by the act. In such cases the burden is on the employee to show that both parties are bound by

the act by their election. At the close of the evidence of defendant in error before the arbitrator plaintiff in error made a motion to dismiss the application for compensation on the ground that there was no proper showing in the record that plaintiff in error was operating under the Compensation act. This motion was overruled by the arbitrator, and there was no further evidence introduced on the question of the jurisdiction of the arbitrator to consider the application.

There is another reason why the judgment of the court cannot stand. Section 24 of the Compensation act provides that no proceedings for compensation under the act shall be maintained unless claim for compensation has been made within six months after the accident, or, in the event that payments have been made under the provisions of the act, unless written claim for compensation has been made within six months after said payments have ceased, and receipt therefor, or a statement of the amount of compensation paid, shall have been filed with the commission, etc. This record is absolutely barren of any showing that such claim for compensation has been made or that any compensation has been paid to defendant in error. In fact, it is stipulated that no compensation has been paid to him for his injury and that no medical services have been furnished to him. There are also good grounds for the contention of plaintiff in error that the record does not sustain the award of compensation for temporary total incapacity if the facts in the record are considered in connection with the holdings of this court in the cases of *Stromberg Co.* v. *Industrial Com.* 305 Ill. 619, *Mt. Olive Coal Co.* v. *Industrial Com.* 295 id. 429, and *Consolidated Coal Co.* v. *Industrial Com.* 320 id. 281. The period of temporary total incapacity should not include any part of the period wherein the incapacity has become permanent.

For the reasons aforesaid the judgment of the superior court of Cook county is reversed and the cause is remanded,

with directions to set aside the award of the Industrial Commission and to remand the cause for further hearing before the commission if the defendant in error shall be so advised and shall so request.

*Reversed and remanded, with directions.*