(No. 22330.—)

THE WESTERN CARTRIDGE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM CROSBY, Defendant in Error.)

*Opinion filed June 15, 1934.*

GREEN & VERLIE, for plaintiff in error.

W. J. MACDONALD, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On March 14, 1932, William Crosby, an employee of the Western Cartridge Company at its East Alton, Illinois, plant, sustained an accidental injury arising out of and in the course of his employment which caused an umbilical hernia. He was at that time earning $18.70 a week and had two children under sixteen years of age. He was then fifty years old, strong and able-bodied, but overweight

for his height and had a large abdomen. At the time of his injury, Crosby, with some other workmen, was taking a heavy coil up an incline when the coil slipped or started to fall, throwing Crosby and straining him, thereby causing the resultant injury. He was given hospital and surgical service at the expense of his employer, an operation being performed for the hernia, which is admitted by all of the doctors who testified, to have been a successful one and to have produced a cure. On May 3, 1932, he returned to work for the plaintiff in error. He was given lighter work but at the same wages he had previously received. This work consisted of tacking canvas on frames and was done while sitting down. It is urged on behalf of the defendant in error that this was not really work at all but simply a "manufactured" job, devised for the purpose of shortening the period of temporary total disability. The point, in any event, is unimportant in the view we take of the case. He continued at this light work from May 3 until June 10, or slightly more than six weeks, when he was laid off by reason of a necessary reduction in the employer's working forces. He testified that he did not quit of his own accord but would have continued to work had he been given the opportunity. He also testified that he could do almost any kind of work if he did not have to strain himself or lift anything heavy. Immediately after being laid off Crosby filed his application with the Industrial Commission for an adjustment of his claim. In that application he admitted that he had received six weeks' compensation from his employer and all of his medical and surgical expenses, but claimed an unknown number of weeks' temporary total disability and 416 weeks of partial disability. The arbitrator who heard the cause found that the injured employee was entitled to compensation for seven weeks' temporary total disability, which had been paid except the sum of $6.86, for which an award was entered. The employee appealed to the commission, which set aside

the award of the arbitrator and entered an award in favor of the employee at the rate of $12 per week for a period of 61-2/7 weeks, which was found by the commission to be the period of temporary total incapacity. This award was confirmed by the circuit court of Madison county, and the case is in this court upon writ of error duly awarded.

Ten doctors testified on the hearings, but inasmuch as the matter must receive further consideration by the Industrial Commission we will not comment upon the evidence more than is necessary.

There is very little real conflict in the testimony of the doctors, and in substance it amounts to this: They all agreed that the operation for the umbilical hernia was well performed and successful. The wound healed cleanly, with a smooth and firm scar, producing what was described as a perfect result. Thereafter, when the injured employee returned to work in May, he was as far recovered from the injury which he had received as could be brought about by medical, surgical and hospital means. There was no evidence of any further accident of any kind happening to the injured employee. He did, however, thereafter demonstrate to the various physicians a protrusion below the ensiform cartilage and above the umbilicus. This protrusion is referred to by the attorney for the defendant in error as a hernia, but the weight of the medical evidence—in fact, the testimony of all of the doctors except one—was to the effect that it was not a hernia but rather a relaxation of the abdominal wall along that part thereof known as the *linea alba,* or the tendinous portion to which the muscles of the abdomen are attached in the mid line. These doctors testified that this is a condition very frequently seen following an operation where people with corpulent figures have a relaxation from non-use of their muscles. The evidence tends to show that the condition is a result of the relaxation of the muscles from non-use during the period of hospitalization and convalescence. It also ap-

pears from the record that if the employee continues to sit down and relax most of the time the condition is likely to remain, and that while it remains he must avoid excessive strains or heavy lifting but it will not interfere with light work. The evidence further shows that if moderate exercises are taken, so that the abdominal muscles have a chance to regain their former tone, the condition will be likely to disappear.

The fifth finding of the Industrial Commission was as follows:

"*Fifth*—That as a result of said injury the petitioner was temporarily totally incapacitated for work for a period of seven weeks; that said petitioner then returned to work for a period of six weeks, at the end of which time he again became temporarily incapacitated for work, said incapacity lasting for a period of fifty-four and two-sevenths weeks."

In approving this finding of the commission the circuit court erred. Temporary disability exists only from the time of the injury until the employee is as far and as nearly restored to health as the permanent character of the injury itself will permit. (*Consolidated Coal Co.* v. *Industrial Com.* 311 Ill. 61.) In the case last cited we said: "This period is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. It is the period of the healing process." In *Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429, we said: "The period of temporary total incapacity is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. It might be described as the period of the healing process. Temporary as distinguished from permanent disability is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit."

It is apparent that if Crosby had any disability after his return to work it must be classified as either partial or total permanent disability and not as temporary. (*Mt. Olive Coal Co.* v. *Industrial Com. supra; Consolidated Coal Co.* v. *Industrial Com. supra.*) It is not enough for an employee to show that he did not work. It must also appear that he was not able to work. (*Lehigh Stone Co.* v. *Industrial Com.* 315 Ill. 431.) A man is physically able to work when he can do so without endangering his life or health. (*Shoal Creek Coal Co.* v. *Industrial Com.* 300 Ill. 551; *Voight* v. *Industrial Com.* 297 id. 109.) This man did work until he was laid off, and testified that he would have continued to do so had he not been relieved from his employment. He argued that it was not a real job but a "manufactured" job, and that it was light work, which was no real test of his physical ability. Admitting this to be true, it would only go to the question of whether he was partially or totally permanently disabled. The period of total temporary disability had definitely ended. There are substantial reasons under the Workmen's Compensation act why the employer is entitled to have the disability properly classified. One of these reasons is that an allowance for temporary total disability is not deductible from an allowance for partial permanent or total permanent disability. For this reason it is held that the period of temporary incapacity should not be permitted to include any part of that period wherein the incapacity has become either partially or totally permanent. *Chicago Circular Advertising Service* v. *Industrial Com.* 332 Ill. 156.

It is necessary that the judgment be reversed for the errors above indicated and that the cause be remanded to the circuit court, with directions to remand the same to the Industrial Commission. The Industrial Commission will proceed, if requested by the parties, to determine, first, whether there is anything in the physical condition of the defendant in error subsequent to his return to work

34

that permanently disables him either partially or totally, and if so, whether or not that condition was proximately caused by the accident which he suffered in the course of his employment.

*Reversed and remanded, with directions.*