589 A.2d 563

**Charles ALEXANDER**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 1040, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 9, 1991.

276

Kenneth M. Berman (Ashcraft & Gerel, on the brief), Rockville, for appellant.

Richard H. Melnick, Asst. County Atty. (Joann Robertson, Sr. Asst. County Atty. and J. Stephen McAuliffe, Asst. County Atty., on the brief), Rockville, for appellee.

Argued before GARRITY, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Charles Alexander, appellant, appeals from the judgment of the Circuit Court for Prince George's County denying his motion for a judgment N.O.V. He asks two questions:

1. Whether the lower court committed reversible error in not granting appellant's Motion for Judgment N.O.V. where there was legally insufficient evidence for the jury to find that appellant first reached maximum medical improvement on January 16, 1987, given the uncontroverted expert testimony of appellant's treating physician that appellant had first reached maximum medical improvement on February 28, 1983?

2. Whether the trial court committed reversible error by reading the portion of the Workers' Compensation Commission [order] pertaining to *when* benefits were to begin being paid given the Maryland case law which clearly and specifically prohibits the mentioning to juries of amounts or periods of payments in Workers' Compensation cases? (Emphasis in original)

We perceive no error and, so, affirm.

Appellant filed a claim with the Maryland Workers' Compensation Commission for an injury he sustained during the course of his employment with Montgomery County, Maryland, appellee. By order dated December 19, 1988, the Commission determined that he sustained 30 percent permanent partial disability, benefits for which were to be paid weekly, "beginning January 16, 1987." Aggrieved by both the determination of the nature and extent of permanent partial disability and of the timing of the payment of those benefits, appellant appealed to the circuit court. The appeal was heard by a jury, which affirmed the Commission's order as to when the payment of benefits was to begin. The jury returned a verdict, however, finding 50 percent disability, rather than the 30 percent found by the Commission. Still aggrieved by the jury's determination concerning the timing of the payment of benefits, appellant moved for judgment notwithstanding the verdict. It is from the denial of that motion that he appeals.

1.

To establish both that his disability exceeded 30 percent and that he reached maximum medical improvement prior to January 16, 1987, appellant played the video tape deposition of his treating physician, Dr. Robert Viener. The following portion of that deposition is pertinent to the issue of when appellant first reached maximum medical improvement:

Q. Now, doctor, are you familiar with the term maximum medical improvement?

A. Yes.

Q. Is that a term used in orthopedic surgery?

A. Yes.

Q. Can you explain to the ladies and gentlemen of the jury what the term means?

A. Well, there are two meanings. One is that the patient has received care or treatment for a condition that has stabilized to the point where further interventional care is not necessary. He has reached a point or she has reached a point of stability in their disease and they have benefited maximally from their interventional medical care. That is my understanding.

Q. Doctor, based upon your education, your experience and your years of training, coupled with your examination of Mr. Alexander, the history given to you, the fact that he did not come to see you between February of [1983] and March of [1984], your review of the x-rays and your evaluations of him, did you form an opinion within a reasonable degree of medical probability as to whether or not Mr. Alexander reached maximum medical improvement on February 29, 1983? Do you have such an opinion?

A. Well, as of February 28, 1983, I had advised the patient that I need not check him unless his symptoms warranted. I can only assume that because he apparently was doing reasonably well, he did not seek further care, and that would answer the question of whether or not he had reached maximum medical improvement.

Q. Do I understand you to mean that the fact that he did not come back for a year (after February 28, 1983) and did not seek further medical treatment indicates to you that he had reached maximum medical improvement in that time?

A. Yes, it does.

Although appellee did not present expert medical testimony, or, for that matter, any medical evidence, contradicting Dr. Viener's testimony, there was before the jury other evidence pertinent to the issue. There was evidence that, following the injury to his lower back on January 3, 1983, and after receiving treatment from Dr. Viener, appellant

returned to work on January 25, 1983. Thereafter, the record reflects, appellant saw Dr. Viener on February 28, 1983, when, as Dr. Viener testified, he was discharged, with the admonition to seek further treatment should his condition worsen. According to the evidence, appellant next was seen by Dr. Viener in March, 1984, having worked full time, with no apparent manifestations of his injury, prior to that time. On that occasion, he was hospitalized for a time and part of his treatment included injections of epidural steroids.

Released once again from Dr. Viener's care, this time in April, 1984, appellant returned to work. He continued without need of further treatment for the next two years. It was not until September, 1986 that he again was required to seek treatment for his 1983 injury. On this occasion, however, surgery was determined to be necessary. Thus, on October 7, 1988, a lumbar laminectomy was performed. Finally, following a hearing, the Workers' Compensation Commission determined that permanent partial disability benefits were to be paid to appellant beginning January 16, 1987.[1]

At the conclusion of appellant's case, appellee moved for judgment arguing:

> ... the evidence is clear that Mr. Alexander did not reach maximum medical improvement, or his injury did not become permanent until January 16th of 1987, after he had his surgery, which was—and the definition of permanent is reasonable expectation of improvement, and that he could not—he wouldn't have had the surgery and he didn't have any reasonable expectation of improvement, and there was no new injury which caused him to suffer this pain in 1984 and then again in 1986.

---

1. The Commission also ordered payment of "additional temporary total disability ... for the periods February 29, 1984 through April 9, 1984 and September 17, 1986 through January 15, 1987 inclusive." A prior order had indicated that temporary total disability benefits were to be paid, beginning January 7, 1983, and terminate January 25, 1983.

Appellant opposed the motion on the basis that the question "when this man reached medical improvement is a medical determination." Thus, he argued that since Dr. Viener's testimony was "the only medical evidence that has come into this court room" and that testimony was to the effect that *initial* maximum medical improvement occurred in February, 1983, the court was obliged to deny appellee's motion. As he does on appeal, appellant specifically noted that appellee's expert did not, and, indeed, was not asked to, proffer an opinion as to when appellant reached maximum medical improvement. The court denied the motion for judgment.

At the end of appellee's case, appellant moved for judgment, stating, as grounds, the reasons he proffered in opposition to appellee's prior motion for judgment. That motion was also denied, the court ruling:

> I am going to deny the motion and let you both argue this thing to the jury because I think it is a factual issue for the jury to determine in their minds of whether it was after they had given him the various shots and he was feeling pretty good or whether it was after the operation. And I will allow both of you to argue on that, and I am going to deny the motion.

Maryland's worker's compensation law recognizes four different compensable results, based upon the quantity and quality of disability caused by a compensable injury. Maryland Code Ann. Art. 101, § 36; *Jackson v. Bethlehem–Fairfield Shipyard,* 185 Md. 335, 338, 44 A.2d 811 (1945); *Gorman v. Atlantic Gulf & Pacific Company,* 178 Md. 71, 75, 12 A.2d 525 (1940). They are: (1) permanent total disability, § 36(1); (2) temporary total disability, § 36(2); (3) permanent partial disability, § 36(3); and (4) temporary partial disability, § 36(6). Addressing the difference between these compensable results, the Court of Appeals observed in *Queen v. Queen,* 308 Md. 574, 585–86, 521 A.2d 320 (1987):

> Total, as distinguished from partial, disability occurs when a worker "is so injured that he can perform no

services other than those which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist." *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 474, 265 A.2d 871 (1970) (quoting *Lee v. Minneapolis St. Ry.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950)). A temporary, as distinguished from permanent, disability exists "until the injured workman is as far restored as the permanent character of the injuries will permit." *Jackson v. Bethlehem–Fairfield Shipyard*, 185 Md. 335, 339, 44 A.2d 811 (1945). Differentiating between temporary and permanent disabilities, several courts have observed that temporary disability payments are a substitute for lost wages during the temporary disability period, while permanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity. Thus, these courts indicate that permanent disability is not based solely on loss of wages, but is based on actual incapacity to perform the tasks usually encountered in one's employment, and on physical impairment of the body and may or may not be incapacitating.... (Some citations omitted)

In *Gorman*, the Court of Appeals explicated "that this period of temporary total disability is the healing period, or the time during which the workman is wholly disabled and unable by reason of his injury to work." 178 Md. at 78, 12 A.2d 525.

 Bearing in mind, these principles as to which the parties are in substantial, if not total agreement, we address the issue before us: the propriety of the court's ruling on appellant's motion for judgment N.O.V. As to that, we are mindful that

[i]n reviewing a trial court's grant of a motion for judgment notwithstanding the verdict, the evidence and all reasonable inferences which can be drawn from it must be considered in the light most favorable to the party opposing the motion. *Impala Platinum, Ltd. v. Impala Sales, Inc.*, 283 Md. 296, 328, 389 A.2d 887 (1978). Only

where reasonable minds cannot differ and the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the plaintiff, does the issue in question become one of law for the court and not of fact for the jury. *Burns v. Goynes,* 15 Md.App. 293, 301, 290 A.2d 165[, *cert. denied,* 266 Md. 737] (1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1398, 35 L.E.2d 603 (1973).

*Pickett v. Haislip,* 73 Md.App. 89, 98, 533 A.2d 287 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988). Thus, the motion for judgment notwithstanding the verdict tests the sufficiency of the evidence. *Impala,* 283 Md. at 326, 389 A.2d 887. Consequently, the focus of appellate review of a ruling on such a motion is to determine if the evidence was sufficient to support the jury's verdict; only if that review reveals that there was sufficient evidence, will the verdict stand undisturbed. *I.O.A. Leasing Corp. v. Merle Thomas Corp.,* 260 Md. 243, 250, 272 A.2d 1 (1971).

■ Appellant perceives the critical issue for resolution by the trier of fact to be when does an injured employee first reach maximum medical improvement? That determination is, he argues, a medical issue, the proof of which requires expert testimony. Consequently, appellant contends that, since the only medical expert testimony presented at the trial was that of appellant's treating physician, there was no issue to be presented to the jury; the court was required to find, as a matter of law, that appellant's permanent partial disability began as of the date testified to by his treating physician. Appellant relies on the definition of temporary total disability set out in *Gorman, supra* and *Kirkland v. Benedict & Jordan,* 120 So.2d 169 (Fla.1960) ("temporary total disability' [is] the healing period or time during which the claimant is, by reason of injury, totally disabled and unable to work, and recovery is reasonably expected"). For the proposition that "maximum medical improvement" is a medical issue, provable by medical expert testimony, he cites 2 Larson's Workmen's Compensation Law, § 57.12(c) (1989); *Aino's Custom Slip Covers v. DeLucia,* 533 So.2d 862, 864 (Fla.App. 1 Dist.1988), *review*

*denied,* 544 So.2d 199 (Fla.1989) (maximum medical improvement is medical concept); *Reynolds v. Browning Ferris Industries,* 113 Idaho 965, 751 P.2d 113, 116 (1988) (testimony of two doctors established that claimant's condition was progressive); *Martin v. State Accident Insurance Fund,* 77 Or.App. 640, 713 P.2d 1083, 1084, *review denied,* 301 Or. 240, 720 P.2d 1279 (1986) (Compensation Board could justifiably rely on doctor's letter that claimant was medically stationary); *Anderson v. Carlsons Transport,* 178 Mont. 290, 583 P.2d 440, 442 (1978) (Compensation Court's findings based on 2 doctors' testimony and opinion); *Wilke v. State Accident Insurance Fund,* 49 Or.App. 427, 619 P.2d 950, 951 (1980) (When claimant became medically stationary was established by testimony of treating physician and psychologist); *Lewis G. Reed & Sons, Inc. v. Wimbley,* 533 So.2d 628, 630–31 (Ala.Civ.App.1988); *Wroton v. Lamphere,* 147 Vt. 606, 523 A.2d 1236, 1238 (1987); *Minelian v. Electrolizing Company,* 111 R.I. 215, 301 A.2d 78, 79 (1973).

Appellee denies that the treating physician's testimony was uncontroverted, citing the Commission's order that permanent partial disability be paid on a date subsequent to that testified to by that physician and the presence in the record of other evidence, some coming from appellant's treating physician, concerning treatment appellant received subsequent to February 28, 1983 for his January, 1983 back injury. It is appellee's position that the issue is not one of law for the court to determine, but, rather, one of fact to be resolved by the jury. There is in the record, it asserts, circumstances and evidence from which a trier of fact could reach a different conclusion than that presented by the testimony of the expert medical witness. In fact, appellee states that the jury could have reached different conclusions, based simply on the inferences to be drawn from the treating physician's testimony and, therefore, it was entitled to the inference most favorable to it.

Unlike appellant, appellee focuses on that aspect of the definition of temporary disability emphasized in *Jackson v.*

*Bethlehem–Fairfield Shipyard,* 185 Md. at 339, 44 A.2d 811, namely that temporary disability exists "until the injured workman is as far restored as the permanent character of the injuries will permit." Therefore, appellee argues: "while a claimant who has returned to work may not be temporarily totally disabled he may also not be as far restored as the permanent character of his injuries will permit."

We agree with appellee. The issue is one of fact to be resolved by the jury. The evidence and the inferences, reasonably and logically deducible therefrom, permit reasonable minds to differ as to the conclusion to be drawn from it. His treating physician did testify that February 28, 1983 was the date when appellant reached maximum medical improvement; however, the record also contains evidence that appellant received additional treatment. Simply because the additional treatment occurred, respectively, a year and three years after February 28, 1983, does not require a jury to infer that, when appellant returned to work and worked, for a considerable period, without need of treatment, that he had been so far restored as the permanent character of his injury would permit.

We also reject appellant's argument that the issue of maximum medical improvement must, and can only, be established, by expert medical evidence. There is no incongruity between an issue being a medical issue and, yet, being a factual one for determination by the jury. In such circumstances, it is not necessary that the medical evidence consist only of expert opinion; it need only consist of facts and circumstances from which an inference as to the claimant's medical condition could be drawn. That is, in our view, the situation here.

Like appellee, we do not find the out-of-jurisdiction cases cited by appellant to be persuasive on the point raised by this appeal, being, for the most part, too fact specific, *e.g., Minelian v. Electrolizing Company, supra; Martin v. State Accident Ins. Fund, supra,* easily distinguishable,

*e.g. Wilke v. State Acc. Ins. Fund, supra, Anderson v. Carlsons Transport, supra; Reynolds v. Browning Ferris Industries, supra,* or simply nonpersuasive. *Aino's Custom Slip Covers v. DeLucia, supra,* is actually consistent with our holding. There, although the Court noted that maximum medical improvement ("the date after which recovery or lasting improvement can no longer be reasonably anticipated") is a medical, not an employment, concept, implicit in the decision is the recognition that the date of maximum medical improvement must be determined from the evidence "considered as a whole." 533 So.2d at 864. The only evidence in the case on the point being "medical testimony," the issue here presented simply was not at issue.

In *Rose v. Thornton & Florence Electric Company,* 4 Kan.App.2d 669, 609 P.2d 1180 (1980), the Court specifically recognized that "[w]hether an injury is temporary or permanent in nature is a question of fact." *Id.,* 609 P.2d at 1183. Similarly, in *Lewis G. Reed & Sons v. Wimbley, supra,* the Court acknowledged that "a trial court can find total permanent disability without *any* medical testimony as to physical disability," (Emphasis in original), 533 So.2d at 631, a point clearly inconsistent with the proposition advanced by appellant.

## 2.

 Appellant next argues that it was error for the lower court to read to the jury that portion of the Commission's order stating that permanent partial disability benefits were to begin being paid on January 16, 1987 and in allowing counsel for appellee to comment, to like effect, in his opening statement. According to appellant, by so doing, the court allowed the jury to consider matters not within its province to resolve. He relies on *Bethlehem Shipyard v. Damasiewicz,* 187 Md. 474, 483, 50 A.2d 799 (1947), *citing Schiller v. Baltimore & Ohio Railroad Company,* 137 Md. 235, 242, 112 A. 272 (1920). ("On an appeal from the Commission it is not within the province of the jury to make

an award for any amount or to fix the rate or period of compensation.") *See also Miller v. James McGraw Company*, 184 Md. 529, 536, 42 A.2d 237 (1945).

We do not agree. The jury was asked to decide when appellant achieved maximum medical improvement. Before that issue could be submitted to the jury, it had to be decided by the Commission and the Commission's decision on the issue is presumed correct. There was, thus, no impediment to the jury being apprised of the Commission's decision; indeed, because it is presumed correct, that decision had to be presented to the jury. And that is all that occurred here. The court did not comment on, and counsel did not argue about, the amount of the payments the Commission ordered; the jury was simply apprised that the Commission found appellant entitled to permanent partial disability as of a certain date, the very issue it had to decide pursuant to the issue presented to it. When maximum medical improvement is reached and when permanent partial disability payments are to begin are, under the facts *sub judice*, for all intents and purposes, the same question. We discern no error.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.