76 A.3d 499

PHUONGLAN NGO

v.

CVS, INC., et al.

No. 807, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 25, 2013.

408

Benjamin T. Boscolo (ChasenBoscolo Injury Lawyers, on the brief), Greenbelt, MD, for Appellant.

Michael S. Fox (Semmes, Bowen & Semmes, on the brief), Baltimore MD, for Appellee.

Panel: ZARNOCH, GRAEFF and JAMES P. SALMON (Retired, Specially Assigned), JJ.

SALMON, J.

The sole question that we are called upon to decide in this case, as phrased by the appellant, Phuonglan Ngo, is:

Can a claimant who has reached maximum medical improvement receive temporary total disability benefits under the Maryland Workers' Compensation Act?

We shall answer that question in the negative and affirm the judgment of the Circuit Court for Prince George's County.

## I.

### Background

On December 21, 2009, Phuonglan Ngo (hereinafter "claimant") was 68 years old and working at a CVS store in Hyattsville, Maryland. While in the course of her employment as a pharmacist, claimant fell on some ice that had accumulated on CVS's premises. Claimant suffered an injury to her mid and low back as a result of that fall.

Claimant began receiving temporary total disability payments through CVS's insurer, American International South Insurance Company (hereinafter "American International"), on the day following her fall. She commenced medical treatment shortly after the accident and on April 27, 2010, saw, for the first time, Dr. Joel Falik, a neurosurgeon. Dr. Falik's examination showed that the claimant had a medical condition known as kyphoscoliosis throughout the lumbar and thoracic spine. In layman's terms, this meant she had a pre-existing S-shaped curve to the mid and low back portion of her spine. A MRI scan of the claimant's back revealed that she also had

a fracture at the T–12 level. This fracture was due to the subject accident. Fragments from the fracture entered the spinal canal at the site of the curvature of claimant's spine. There was not, however, any compression of the spine.

Dr. Falik believed that claimant might benefit by a kyphoplasty, which is a surgical procedure, to repair the fracture. Dr. Falik referred claimant to Dr. Khaled M. Kebaish, an orthopedic surgeon with offices in Baltimore, Maryland, to further evaluate claimant's medical condition.

On July 7, 2010, claimant met with Dr. Kebaish who discussed with her the advantages and disadvantages of having a kyphoplasty. Claimant, on that date, decided not to have the surgery.

On July 27, 2010, after it received word that claimant had declined to have surgery, American International stopped making temporary total disability payments to claimant. Claimant filed issues with the Maryland Workers' Compensation Commission ("the Commission"), on August 23, 2010 and asked the Commission to:

1) Order vocational rehabilitation.

2) Reinstate temporary total disability payments.

On October 14, 2010, claimant saw Dr. Jerome Gardiner, an orthopedic surgeon. Dr. Gardiner had been retained by American International to perform an independent medical examination of claimant. Dr. Gardiner concluded that as of October 10, 2010, claimant was unable to return to full-time work. In his opinion, however, she was capable of working four hours per day, provided that her job was a sedentary one. In Dr. Gardiner's opinion, claimant had already reached maximum medical improvement due to her job-related injury inasmuch as she had decided not to have surgery.

A hearing was held before the Commission on December 1, 2010. The Commission considered, *inter alia,* claimant's testimony and the reports of Drs. Gardiner, Falik and Kebaish.

On December 21, 2010, exactly one year after the subject accident, the Commission issued its opinion and order, which read, in material part, as follows:

Hearing was held in the above claim in Beltsville, Maryland on December 1, 2010 on the following issues:

1) Maximum medical improvement.

2) Temporary total disability.

3) Vocational rehabilitation.

The Commission finds that as a result of the accidental injury sustained on December 21, 2009, claimant was paid compensation for temporary total disability from December 22, 2009 to July 26, 2010 inclusive. The Commission finds on the first issue presented that claimant is at maximum medical improvement. The Commission finds on the second issue presented that temporary total disability from July 27, 2010 to present and continuing is denied. The Commission finds on the third issue presented that a 60–day vocational rehabilitation program for job placement is authorized. The Commission further finds that claimant shall be paid compensation for vocational rehabilitation benefits at the temporary total disability rate during the period of vocational rehabilitation.

Claimant filed a petition for judicial review in the Circuit Court for Prince George's County and requested a jury trial. After the employer/insurer filed an answer to the petition, claimant filed a motion for summary judgment, in which she asked the court to "modify" existing workers' compensation law. In her memorandum in support of that motion, claimant stated that she *did not* dispute Dr. Gardiner's determination that she had presently reached "maximum medical improvement for her injuries...." She also admitted in her memorandum that "decades of Maryland case law" supported the Commission's decision to terminate "temporary total disability benefits solely on the basis ... that [the claimant had reached] maximum medical improvement...." She further admitted that "Maryland appellate decisions have regularly supported the termination of temporary disability benefits

upon a finding of maximum medical improvement regardless of whether a claimant continues to suffer from loss of earning capacity."

Despite the existing case law, claimant contended that she was entitled to summary judgment in her favor because the "Maryland Legislature never intended that a finding of maximum medical improvement mark[s] the end of the temporary total disability" compensation period. Based on her counsel's reading of the intent of the Maryland General Assembly, claimant asked the court to "modify existing law to prevent further impermissible burden-shifting in clear contravention of the traditional role of the Commission or court." After the employer/insurer responded to the summary judgment motion, the circuit court denied that motion.

Shortly before trial, the employer/insurer filed a motion *in limine*, in which movants pointed out that in his video-taped deposition, which was to be shown to the jury at trial, claimant's own expert, Dr. Falik, testified that claimant had reached "maximum medical improvement" on January 21, 2011.[1] Next, relying on some of the same cases that claimant had cited in her memorandum in support of summary judgment, the employer/insurer contended that as a matter of law, temporary total disability benefits must terminate when the claimant reaches maximum medical improvement. Movants asked the court to rule that "temporary total disability benefits should be limited to a closed period of benefits from July 27, 2010 to January 21, 2011 and not an open and continuous period." The circuit court denied the motion *in limine*.

Trial was held on July 13, 2012. The video-taped deposition testimony of Dr. Gardiner and Dr. Falik was presented to the jurors. Dr. Gardiner testified that claimant had reached maximum medical improvement on July 7, 2010, which was the date that claimant decided not to have surgery. Dr. Falik

---

1. At trial, the parties agreed that the date of maximum medical improvement, according to Dr. Falik, should have been January 18, 2011, not January 21, 2011, because he last saw claimant on January 18, 2011.

testified that claimant reached maximum medical improvement on the date he last saw claimant, which was "in early 2011, in January of 2011."

Claimant testified that after she declined surgery in July 2010, she continued to see Dr. Falik, who prescribed pain medication therapy up until January of 2011. Claimant also testified that Dr. Gardiner had advised her in the fall of 2010 that she was able to work four hours per day at a job that would allow her to sit down and did not require her to lift over ten pounds. At that point, claimant began looking for jobs of the sort suggested by Dr. Gardiner. According to claimant's testimony, she applied for approximately 50 jobs of the type recommended. The jobs she applied for included receptionist, clerk, help desk employee and pharmacy technician. Claimant testified that she believed that she was physically capable of performing the jobs for which she applied. Nevertheless, she received no job offers and was still unemployed.

At the conclusion of the evidentiary phase of the case, the employer/insurer made a motion for judgment based on the same grounds as those set forth earlier in their *in limine* motion. The motion for judgment was denied.

The jury, after deliberation, filled out a special verdict sheet and found as follows:

1) That the Claimant reached maximum medical improvement as of "January, 2011,"

2) That the Claimant was temporarily and totally disabled from performing any and all work for any period of time after July 27, 2010, solely as a result of the December 21, 2009 accidental injury, and

3) That the Claimant continued to be temporarily and totally disabled from July 27, 2010 "until she finds a job."

The employer/insurer filed a motion for judgment notwithstanding the verdict (hereinafter "judgment N.O.V.") or, in the alternative, for a new trial, based on the same arguments they had put forth in their *in limine* motion. Claimant, in response to the post-trial motions, no longer argued, as she had in her motion for summary judgment, that Maryland case law

did not reflect the intent of the Maryland General Assembly. Instead, appellant's counsel argued that Maryland case law supported her position that temporary total disability benefit payments could continue after the worker reached maximum medical improvement, so long as the claimant remained totally disabled.

After a hearing, the trial judge conceded that she should have granted the employer/insurer's motion *in limine*. The trial judge then granted the motion for judgment N.O.V. on the grounds that the evidence, taken in the light most favorable to the claimant, showed that claimant had reached maximum medical improvement in January of 2011, and, therefore, claimant was currently not entitled to receive temporary total disability payments. Next, the parties stipulated that Dr. Falik's testimony showed that the date of maximum medical improvement was the date that Dr. Falik last saw claimant, which was January 18, 2011.

On June 1, 2012, the circuit court signed an order setting aside the finding by the jury that the claimant was "temporarily and totally disabled from July 27, 2010 to the present and continuing until she finds a job." The court also vacated the December 21, 2010 order of the Commission and remanded the case to the Commission for entry of an order that stated:

1) Ms. Ngo attained maximum medical improvement in January 2011;

2.) Ms. Ngo was temporarily totally disabled solely as a result of her December 21, 2009 accidental injury after July 21, 2010, and

3) Ms. Ngo is temporarily totally disabled from July 27, 2010 until "January 18, 2011 . . . ." [2]

Claimant then filed a timely appeal to this Court.

---

2. The trial judge denied the employer/insurer's motion for new trial.

 

## II.

## Analysis

In *Wal Mart Stores, Inc. v. Holmes,* 416 Md. 346, 353–54 n. 2, 7 A.3d 13 (2010), the Court of Appeals said:

> The four categories of disability benefits to which an injured worker may be entitled are: temporary partial disability (disability which is temporary in duration and partial in extent) under [Md.Code (1991), 2008 Repl. Vol.] §§ 9–614–9–617 [of the Labor & Employment Article]; temporary total disability (disability which is temporary in duration but total in extent) under §§ 9–618–9–624; permanent partial disability (disability which is permanent in duration and partial in extent) under §§ 9–625–9–634; and permanent total disability (disability which is permanent in duration and total in extent) under §§ 9–635–9–642.

In this appeal, appellant contends that Maryland case law supports her position that temporary total disability payments may continue even after the worker reaches maximum medical improvement, so long as the claimant remains wholly disabled. For this proposition, appellant cites *Gorman v. Atlantic Gulf & Pacific Co.,* 178 Md. 71, 12 A.2d 525 (1940).

At the time the *Gorman* case was decided, the maximum amount that an employer had to pay to an employee for permanent partial disability was $5,000. After receiving $3,400 in temporary total disability payment, Gorman applied for permanent partial disability benefits. *Id.* at 73, 12 A.2d 525. The employer took the position that the maximum it would have to pay in permanent partial disability payments was $1,600 ($5,000 less $3,400 that the employee had received for temporary total disability). *Id.*

The *Gorman* Court rejected the employer's argument saying: "A temporary total disability and a permanent total disability, a temporary partial disability and a permanent partial disability are four different compensable results; and the measure of the compensation to be appropriately awarded in these instances as they may occur is not for the court to

create nor change." *Id.* at 75, 12 A.2d 525. The Court went on to observe that the "General Assembly provided that where there was a temporary total disability the compensation for a permanent partial disability from specified injuries should be in addition to the compensation allowed for the temporary total disability and be consecutively paid." *Id.* at 78, 12 A.2d 525. The *Gorman* Court then used the following language, upon which appellant relies in this case:

It may be added that this period of temporary total disability is the healing period, *or* the time during which the workman is wholly disabled and unable by reason of his injury to work. It is, therefore, a separate and unitary period of compensation, and as such is distinguished from a permanent partial disability.

*Id.* (Emphasis added.)

In the case *sub judice*, appellant contends that the governing rule should be that even though the healing period has ended (because the worker has reached maximum medical improvement), a worker may still receive temporary total disability payments if he or she remains wholly disabled and unable, by reason of his or her injury, to work. In making this argument, appellant stresses that in the excerpt from *Gorman* just quoted, the Court used the disjunctive "or," which means, according to appellant, that a worker is entitled to temporary total disability benefits if she can prove either that she is in the healing period *or* she is still totally disabled.[3] We disagree with appellant's interpretation of *Gorman*. To read the language of *Gorman* as appellant does would blur and distort the distinction between permanent disability (either partial or total) and temporary disability.

---

**3.** Appellees devote a significant part of their brief attempting to demonstrate that because appellant was able to work part time, she was not totally disabled after January 11, 2011. Therefore, according to appellees, even if the test proposed by appellant was correct (which appellees dispute), appellant would not benefit. This argument, although it appears to have merit, need not be addressed.

In *Buckler v. Willett Construction,* 345 Md. 350, 360, 692 A.2d 449 (1997), which was decided 57 years after *Gorman,* the Court of Appeals interpreted the same language that appellant relies upon. The *Buckler* Court said: "Temporary total disability . . . refers to the healing period *during which* the employee is unable to work due to the injury." (Emphasis added). In other words, to receive temporary total disability, a claimant must be both in the "healing period" *and* be totally disabled.

The *Buckler* Court's reading of the *Gorman* case is strongly buttressed by the case of *Jackson v. Bethlehem–Fairfield Shipyard, Inc.* 185 Md. 335, 44 A.2d 811 (1945). The question presented in *Jackson* was very similar to the one considered by the Court in *Gorman.* The *Jackson* Court set forth the issue presented as follows:

> [W]hether, (in 1942) (i) the maximum total ($6,000) allowable for 'permanent total disability' under [Article 101] Section 48(1), [a] included or [b], was 'in addition to and consecutive with,' (ii) any compensation previously paid for 'temporary total disability' under section 48(2).[4]

*Id.* at 337, 44 A.2d 811.

The *Jackson* Court ruled that the Commission acted within its power in making an award for permanent total disability that was in addition to (*i.e.,* without crediting) an award for temporary total disability. *Id.* at 340, 44 A.2d 811. In reaching this decision, the *Jackson* Court explained and gave effect to the *Gorman* case, saying:

> "In the *Gorman* case this court said 'that this period of temporary total disability is the healing period or the time during which the workman is wholly disabled and unable by reason of his injury to work. It is, therefore, a separate and unitary period of compensation, and as such is distinguished from a permanent partial disability.' 178 Md. [at] 78, 12 A.2d [at] 529. *This 'healing period' is distinguished*

---

4. The statutory references in *Jackson* all refer to Maryland Code, 1939, Article 101.

*from a permanent disability, partial or total. 'Temporary, as distinguished from permanent, disability, under the Workmen's Compensation Act, is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit. An apt illustration is a case where there has been a loss of both arms. The temporary disability to be considered in such an instance is the physical state of the patient until the stumps are healed and he is able to get about. The actual disability to do effective work is the same in either case and continues for life.' Vishney v. Empire Steel & Iron Co.,* 1915, 87 N.J.L. 481, 483, 95 A. 143, 144; *cf. Mt. Olive Coal Co. v. Industrial Commission,* 1920, 295 Ill. 429, 431–432, 129 N.E. 103; *Stromberg Motor Device Co. v. Industrial Commission* [1923], 305 Ill. 619, 137 N.E. 462; *Western Cartridge Co. v. Industrial Commission,* 357 Ill. 29, 32, 191 N.E. 213. *'The period of temporary total incapacity should not include any part of the period wherein the incapacity has become permanent.'* *Chicago Circular Advertising Service, Inc. v. Industrial Commission,* 1928, 332 Ill. 156, 162, 163 N.E. 408, 410; *cf. Birmingham v. Lehigh & Wilkes–Barre [Wilkesbarre] Coal Co.,* N.J.1915, 95 A. 242, 243."
185 Md. at 339–40, 44 A.2d 811. (Emphasis added).

▮▮▮▮ The language just quoted from *Jackson* supports the employer/insurer's position in this case as to what the word "temporary" means when determining how long the period of temporary total disability lasts. An injury cannot be considered "temporary" once the healing period has ended, *i.e.,* once the injured worker is as far restored as the permanent character of the injuries will permit. *Id.* at 339, 44 A.2d 811. The language from *Jackson* shows that even if a claimant's disability is total (where, for instance a worker loses both arms), the claimant is still not entitled to temporary total disability once the healing period ends, even if the worker is unable to perform any job. Once the healing period has expired, to obtain further workers' compensation benefits, that worker is required to apply for either permanent partial disability or permanent total disability.

In *Sears, Roebuck v. Ralph*, 340 Md. 304, 309, 666 A.2d 1239 (1995) the Court said:

'Maximum medical improvement' is the stage at which workers' compensation claimants have 'reached a point of stability in their disease and they have benefitted maximally from their interventional medical care.' (Quoting *Alexander v. Montgomery County*, 87 Md.App. 275, 279, 589 A.2d 563 (1991)).

Our conclusion that a claimant cannot receive temporary total disability payments after he or she has reached maximum medical improvement is also supported by language used by the Court of Appeals in *Victor v. Proctor & Gamble Manufacturing Co.*, 318 Md. 624, 569 A.2d 697 (1990). Edward Victor suffered an accidental injury arising out of his employment with Proctor & Gamble that entitled him to temporary total disability benefits. *Id.* at 626, 569 A.2d 697. Later, the Commission granted Victor a supplemental award for permanent partial disability. *Id.* Shortly thereafter, although Victor, age 62, was able to work, he voluntarily retired from his job. *Id.* He was still physically able to work until December 29, 1988, when his work-related condition worsened, which caused him to once again apply for temporary total disability benefits. *Id.* The Commission reopened Victor's case and, after a hearing, awarded him temporary total disability benefits from December 29, 1988 "and continuing." *Id.* Proctor & Gamble filed a petition for judicial review in the Circuit Court for Baltimore County.

The circuit court reversed the Commission, holding that because Victor had retired, he was not going to be able to work or earn wages even after the injury had healed and therefore was ineligible for benefits. The circuit court expressed the view that a claimant who voluntarily retires is not entitled to temporary total disability after retirement under any circumstances. *Id.* at 627, 569 A.2d 697.

Victor filed an appeal to this Court as well as a petition to the Court of Appeals for a *writ of certiorari*. The petition was granted by the Court of Appeals. *Id.* The Court reversed the

circuit court on the basis that "disability" under the workers' compensation statute "envisions diminished earning capacity and not actual loss of wages *per se* " and therefore, "Victor's voluntary retirement from his job at Proctor & Gamble had no effect whatsoever on his entitlement to compensation for temporary total disability." *Id.* at 632, 569 A.2d 697. The *Victor* Court explained:

> *We have declared . . . that Victor's entitlement to compensation for temporary total disability continues until he has reached maximum improvement, at which time his earning capacity could be revalued in light of his then physical condition. Vigneri v. Mid City Sales,* 235 Md. 361, 363, 201 A.2d 861 (1964); *Flood v. Merchants [Mut. ] Ins. Co.,* 230 Md. 373, 375, 187 A.2d 320 (1963). *See* Art. 101, § 36(2)(ii) 4. It is not disputed that at the time Victor retired he was physically able to work. The number and variety of reasons for retiring are almost unlimited. *See* 2 Larson, *Workmen's Compensation Law* § 57.64(b) (1989). *But here the reason Victor retired is of no moment.* When his condition resulting from the injury worsened, he was found to be totally disabled, albeit temporarily. *During the healing period, and until he reached maximum improvement, he was deemed under the Act to be unable to work, even if he desired to do so, because he was totally disabled. His earning capacity during that period was nil.* The circuit court judge declared that 'because claimant retired . . . he was not going to be able to work or to earn wages even after his injury had healed. Due to his retirement, he had no expectation of receiving wages upon a return to work.' This conclusion, in any event, is simply not supported by the fact of Victor's retirement from Proctor & Gamble. Leaving that employment did not forever bar him from the labor force. Until he became totally disabled, he could have sought and obtained employment elsewhere, despite that he may have been partially disabled. He was not without expectation, by reason of his retirement, of receiving wages upon a return to work. *It was not his retirement that impeded his earning capacity, but the total disability re-*

*sulting from his accidental injury.* This being so, he was entitled to the compensation and benefits appropriate to his temporary total disability.

*Id.* at 632–633, 569 A.2d 697 (emphasis added).

As can be seen, the *Victor* Court equated the date that the "healing period" ended (for purposes of determining entitlement to temporary total disability benefits) as the date the claimant reached "maximum medical improvement." The *Victor* Court's statement, that entitlement to temporary total disability benefits continues until the claimant has reached maximum medical improvement, is just another way of saying that entitlement to such benefits does not continue for any period after maximum medical improvement is reached.

In her brief, appellant attempts to distinguish *Victor* by arguing:

In Mr. Victor's case, *as a matter of law,* entitlement [to] temporary total disability shall continue only until he reached maximum improvement *because he had removed himself from the labor market.* The court concluded that when an injured worker voluntarily removes themselves [sic] from the labor market, temporarily and totally disabled [sic] could only be allowed until the injured worker attains maximum medical improvement.

(Emphasis added).

Appellant misreads *Victor.* The *Victor* Court unequivocally said that the claimant's retirement did not affect his right to receive temporary total disability benefits, *id.* at 632, 569 A.2d 697, because, it "was not his retirement that impeded his earning capacity, but the total disability resulting from his accidental injury." 318 Md. at 633, 569 A.2d 697.

About six years after *Victor* was decided, the Court of Appeals, in *Bowen v. Smith,* 342 Md. 449, 677 A.2d 81 (1996), decided another case that applied the same basic principles as those enunciated in *Victor.* Roland H. Bowen sustained a compensable accidental injury to his back while working for A.H. Smith & Company. *Id.* at 452, 677 A.2d 81. As a result of his injury, Bowen received temporary total disability bene-

fits from December 13, 1989 through July 11, 1991. Bowen was incarcerated from July 23, 1991 through December 9, 1991. The employer terminated payment of Bowen's temporary total disability benefits during the period he was incarcerated. *Id.* at 453, 677 A.2d 81.

Bowen filed issues with the Commission and asked it to decide whether his employer properly terminated total temporary disability payments for the period he was incarcerated. *Id.* The Commission held that the employer was justified in denying temporary total disability benefits during the period of incarceration.

Bowen filed a petition for judicial review in the Circuit Court for Calvert County. The circuit court granted the employer's motion for summary judgment on the basis that, during his period of incarceration, Bowen's inability to work was not caused by the accident but was caused by the fact that he was in jail. *Id.* at 453, 677 A.2d 81.

The Court of Appeals reversed, holding that "like voluntary retirement, incarceration does not cause a claimant's injury nor cause the claimant to become disabled." *Id.* at 458, 677 A.2d 81. In the course of its decision, the *Bowen* Court, quoting *Jackson,* 185 Md. at 339, 44 A.2d 811, said "[t]emporary disability exists '*until the injured workman is as far restored as the permanent character of the injuries will permit.*'" *Id.* at 456, 677 A.2d 81. *See also Queen v. Queen,* 308 Md. 574, 585, 521 A.2d 320 (1987) ("A temporary, as distinguished from permanent, disability exists 'until the injured workman is as far restored as the permanent character of the injury will permit.'") (quoting *Jackson, supra,* 185 Md. at 339, 44 A.2d 811); *Alexander v. Montgomery County,* 87 Md.App. 275, 282, 589 A.2d 563, (1991) (same).

In *Ralph v. Sears,* 102 Md.App. 387, 395, 649 A.2d 1179 (1994), *aff'd,* 340 Md. 304, 309, 666 A.2d 1239 (1995), we said:

Temporary disability benefits are properly awarded until the point that an injured employee is restored as far as possible given the permanent character, if any, of his injuries. *Alexander v. Montgomery County,* 87 Md.App. 275,

285, 589 A.2d 563 (1991) (citing *Jackson v. Bethlehem–Fairfield Shipyard, Inc.* 185 Md. 335, 339, 44 A.2d 811 (1945)). Thereafter, permanent disability benefits may be awarded. In order to determine at what point permanent disability is allowed, the time of an injured employee's 'maximum medical improvement' must be ascertained. *Alexander*, 87 Md.App. at 286, 589 A.2d 563. 'Maximum medical improvement' is reached when the injured employee is at a point of stability and has reached the maximum benefit of interventional medical care. *Id.* at 279, 589 A.2d 563. When an employee has reached maximum medical improvement, a doctor can then evaluate the nature and extent of the impairment to determine industrial loss of use of the employee's body.

Appellant claims that the phrase "until the injured worker is as far restored as the permanent character of the injuries will permit" does not mean the date of maximum medical improvement. According to appellant, "in order to be as restored as the character of her injuries will permit, she must be found to have healed as far as possible *and reached her employment potential.*" (Emphasis added).

Appellant cites no authority for the part of her argument that we have emphasized. But aside from appellant's failure to cite authority, the argument, on its face, has no merit. As the Court of Appeals said in *Buckler, supra,* 345 Md. at 360, 692 A.2d 449, "[t]emporary disability describes a physical state...." A claimant's "employment potential" is not a physical state.[5]

■ In a related argument, appellant asserts "[u]ntil [appellant] either voluntarily removes herself from the labor market or is placed in suitable gainful employment, the dam-

---

5. Appellant's argument implies that she, as of the date of the trial in this matter, had not yet reached her "employment potential." This does not appear to be the case. Dr. Falik, appellant's own expert, testified, without contradiction, that appellant's back injury, once she rejected surgery and his treatment ended, was not going to get any better. Therefore, appellant's employment potential, insofar as it concerned her work-related injury, was as high as it was ever going to be.

age to her wage earning capacity caused solely by her injury will not be as far restored as the permanent nature of that injury will permit." That argument has the same defects as the ones just discussed. In addition, whether or not appellant "removes herself from the labor market" has nothing to do with her "wage earning capacity." This is made clear by *Victor, supra,* 318 Md. at 633, 569 A.2d 697 and *Bowen, supra,* 342 Md. at 457, 677 A.2d 81.

██ Moreover, contrary to claimant's argument, her entitlement to temporary total disability payments does not hinge on whether she, in her words, "has been placed in suitable employment." This is so because the word "total" as used in the phrase "temporary total disability" means that a worker is only "able to perform services so limited in quality, dependability, or quantity, that a reasonably stable market for them does not exist." *Bowen, supra,* 342 Md. at 456, 677 A.2d 81 (quoting *Baltimore v. Cassidy,* 338 Md. 88, 98, 656 A.2d 757 (1995)).

██ Contrary to appellant's contention, the test as to whether a claimant's disability is permanent is not whether the claimant, individually, is able to convince an employer to hire her. Instead, the test for permanent total disability is whether, at the time a claimant reaches maximum medical improvement, there exists a job for which a reasonable stable market exists. If, due to her work related injury, appellant cannot perform services for which a reasonable stable market exists, but has reached maximum medical improvement, she would be eligible to receive permanent total disability payments. *See Jackson, supra,* 185 Md. at 339–40, 44 A.2d 811. But, " '[t]he period of temporary total incapacity should not include any part of the period wherein the incapacity has become permanent.' " *Id.* at 340, 44 A.2d 811 (quoting *Chicago Circular Advertising Service, Inc. v. Industrial Commission,* 332 Ill. 156, 163 N.E. 408, 410 (1928)). On the other hand, if a stable market for services that claimant can perform exists, then, by definition, appellant is not totally disabled whether

she individually had been successful in finding a job or not. *Bowen, supra,* 342 Md. at 456, 677 A.2d 81.[6]

For the reasons set forth above, we hold that the trial judge did not err in granting the appellees' motion for judgment N.O.V. because, taking the evidence in the light most favorable to the claimant, she had reached maximum medical improvement as of January 18, 2011. Therefore, after that date, appellant was not entitled to receive temporary total disability payments.[7]

---

**6.** In her brief, appellant states, in passing: "There is ... evidence in this record to suggest that [appellant] is *not* as far restored as the permanent character of her injuries will permit." This statement of "fact" is not supported by any reference to the record or record extract. This violates Md. Rule 8–504(a)(4), which provides that an appellant's brief shall contain a "clear and concise statement of the facts material to a determination of the questions presented," together with references to the pages of the record extract "supporting the assertions." Although we were not required to do so, we have reviewed the record and have not found any evidence that supports appellant's assertion that appellant, as of the date of trial, was not as far restored "as the permanent character of her injuries will permit."

**7.** Appellant asserts in her brief that "there is a question of fact as to ... when the healing period ended...." That assertion, while correct, is potentially misleading. Dr. Gardiner testified that the healing period ended on July 7, 2010, and Dr. Falik gave the date of maximum medical improvement as January of 2011. But appellant's assertion might be interpreted to mean that there existed a factual dispute as to whether appellant reached maximum medical improvement on some date after January 18, 2011. Taking the evidence in the light most favorable to appellant, there was nothing in the record that would contradict Dr. Falik's testimony that as of January 2011, when he last saw appellant, she had reached maximum medical improvement, which meant that the healing period had ended. Moreover, as previously mentioned, the jury found as a fact that appellant reached maximum medical improvement "in January of 2011."

There may be, at least conceivably, a case where expert testimony as to when the claimant reached maximum medical improvement could be contradicted by lay testimony. *See Alexander v. Montgomery County,* 87 Md.App. 275, 285, 589 A.2d 563 (1991). ("We also reject appellant's argument that the issue of maximum medical improvement must, and can only, be established by expert medical evidence."). But here, Ms. Ngo, the only lay witness to testify at trial, provided no testimony or other evidence from which the jury could rationally infer that the "healing period" in her case existed for any period after January 18, 2011.

426

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.