482 A.2d 159

Maxwell HALL

v.

**WILLARD SAND AND GRAVEL CO., et al.**

No. 1774, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Oct. 9, 1984.

Kenneth M. Berman, Rockville, with whom were Ashcraft & Gerel, Rockville, on brief, for appellant.

S. Woods Bennett, Baltimore, for appellees, Employer and Insurer.

Irving B. Klitzner, Baltimore, for appellee, Subsequent Injury Fund.

Argued before LISS, BISHOP and GARRITY, JJ.

LISS, Judge.

This is an appeal by Maxwell Hall, appellant, from a judgment of the Circuit Court for Montgomery County affirming a decision rendered by the Workmen's Compensation Commission.

On October 2, 1975, appellant, while in the course of his employment as a heavy equipment operator with one of the appellees, Willard Sand and Gravel Co.,[1] fell from a machine approximately fifteen feet, landing on and injuring his back. About one month later he was admitted to Washington Hospital Center and was scheduled for surgery to his back and also for a hernia problem he had experienced since the October 1975 accident. Due to stomach problems which he had subsequently developed, both operations were postponed. The back operation was performed in January 1977, and the hernia operation in August 1977. Sometime in 1980 appellant underwent surgery to correct a problem with his left shoulder which had caused him difficulties both prior and subsequent to the October 1975 accident.

Appellant filed a claim with the Workmen's Compensation Commission for benefits arising out of his accidental injury sustained by the October 1975 accident while employed by the appellees. The Commission found that the appellant was permanently totally disabled—55% of the disability due to pre-existing conditions, 30% due to the October 1975 accidental injury, and 15% due to subsequent unrelated conditions. Appellant filed a timely appeal to the Circuit Court for Montgomery County and the case was submitted

---

1. The other appellees are the Continental Casualty Company and the Subsequent Injury Fund.

to a jury which affirmed the decision of the Workmen's Compensation Commission. From that judgment appellant noted this appeal. He raises the following two questions to be decided by this Court:

1. Whether the trial court committed reversible error in preventing the appellant from introducing evidence as to his wages at the time of his accidental injury where the issue for the jury was the industrial loss suffered by the appellant and where the trial court allowed evidence to be elicited by the appellees as to appellant's post-injury wages?

2. Whether under Maryland workmen's compensation law the comparison of wages at the time of an injury and subsequent to that injury is relevant as one of the factors to be taken into consideration under Maryland Code (1957, 1979 Repl.Vol., 1983 Cum.Supp.) Art. 101, § 36(4), in determining the appellant's loss of earning capacity?

1.

In its order of May 4, 1983 the Maryland Workmen's Compensation Commission found that the appellant had not sustained an aggravation of his condition resulting from his accidental injury on October 2, 1975. The decision left intact the Commission's earlier findings as to disability.

The appellant had for a long period of time been under the care of Dr. Gerald Schuster, who appeared as a witness for the appellant in this case. Dr. Schuster testified that as a result of the fall in October of 1975 the appellant complained of injuries to his back, neck, right leg and groin and that during the course of his treatment he developed problems with his stomach. Prior to the accident Dr. Schuster had treated the appellant for his back and shoulders and for a naturally progressive arthritic condition known as rheumatoid spondylitis. As a result of various job injuries the appellant had filed five previous workmen's compensation claims before the October 1975 accident. In 1974, the Workmen's Compensation Commission had awarded appellant permanent partial disability benefits for a 55% industri-

al loss of use of the body for the combined effects of the injuries sustained in these accidents. The record also indicates that the appellant had sustained injuries from another accident subsequent to the October 1975 incident when he fell down a flight of stairs. This accident occurred on August 24, 1976. Dr. Schuster treated appellant for injuries to his shoulder as a result of that fall.

In December 1976 appellant was in an automobile accident which according to Dr. Schuster, exacerbated his back condition. A month later surgery was performed on his back. Due to restriction of motion and pain, surgery was performed by Dr. Schuster on appellant's left shoulder in 1980.

During his direct testimony the appellant was asked by his attorney what his average weekly wage was at the time of his accidental injury on October 2. The appellees objected to the question and the judge sustained the objection.

The trial judge gave as his reason for sustaining the objection the following: "I do not think you can go into how much he was earning. That would create undue sympathy from the jury, whether a person was earning a lot of money and now he's earning a little bit of money."

During cross-examination the appellees were allowed to question the appellant as to his wages subsequent to the accidental injury. When counsel for the appellant, on redirect, sought once again to elicit testimony as to what the appellant was earning at the time of the accident in light of the appellees having been allowed to bring out evidence of post-injury earnings on cross-examination, the appellees again objected and the trial court again sustained the objection.

█ Appellant seeks to have this Court hold explicitly that the difference between wages earned by a claimant at the time of an accident and the post-injury earnings of the injured employee is one of several relevant factors which a trier of fact may consider in deciding the amount of loss of industrial use of an employee who has suffered permanent partial disability. This principle has been explicitly enunci-

ated in most jurisdictions and has been implicitly recognized in Maryland. *See* A. Larson, The Law of Worker's Compensation, Vol. 2, § 57.31, 10–68 (rev. ed. 1976). In Maryland it is beyond argument that permanent partial disability in all cases other than those of an injury to a scheduled member of the body is decided pursuant to a determination by the Commission of the claimant's loss of industrial use of his or her body. Section 36(4)(a) Art. 101 of the Maryland Code provides, in pertinent part:

[(4) *Same—Other cases.*]—(a) In all other cases of disability other than those specifically enumerated disabilities set forth in subsection (3) of this section, which disability is partial in character, but permanent in quality, the Commission shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury and in determining such portion or percentage of impairment resulting in industrial loss, the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of injury, and shall award compensation in such proportion as the determined loss bears to 500 weeks, the said compensation to be paid weekly at the rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-three and one-third per centum of the State average weekly wage as determined by the Department of Employment Security.

Appellant argues that included in the phrase "among other things" is evidence as to the actual wages received by the employee both prior to and subsequent to his injury. We agree.

The Court of Appeals in *Bethlehem-Sparrows Point Shipyard v. Damasiewicz*, 187 Md. 474, 480, 50 A.2d 799 (1947), said, "[T]he general purpose of the Workmen's Compensation Act is to provide compensation for loss of earning capacity resulting from accidental injuries sustained in industrial employment."

The United States District Court held in *Cox v. American Store Equipment Corp.*, 283 F.Supp. 390 (D.Md.1968), in comparing the Maryland workmen's compensation statute and that in effect in the District of Columbia, that the determination of industrial loss to the body as a whole is, in essence, a determination of loss of wage-earning capacity.

Appellant does not contend that the *sole* yardstick in measuring loss of earning capacity is the reduction of earnings after the accident. But he does contend that it is one of several relevant factors to be considered in determining the overall loss of earning capacity. *See Oros v. Mayor & City Council of Baltimore*, 56 Md.App. 685, 468 A.2d 693 (1983).

By excluding a comparison of wages at the time of the accident and post-injury wages, the jury was required to decide the amount of permanent partial disability to be dependent almost exclusively on the showing of anatomical loss. In the light of Art. 101, § 36(4) of the Maryland Code and the holding in *Damasiewicz, supra,* this is, we conclude, too narrow a basis for the determination of industrial loss. We think that Professor Larson, in his multi-volumed treatise, The Law of Worker's Compensation, Vol. 2, § 57.30, 10–68 (rev. ed. 1976) correctly stated the law in these cases when he said:

> Apart from schedule and disfigurement allowances, compensation is awarded not for the injury as such *but rather for an impairment of earning capacity caused by the injury.* However, ... post injury earnings and earning capacity are not synonymous. Earnings equal to preinjury earnings are the strongest evidence of nonimpairment of capacity, but they are not conclusive. [Emphasis supplied].

In Maryland, as in most other states, the determination of disability is a continuation of both concepts neither of which is mutually exclusive. As Professor Larson states:

> The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a

blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: The first ingredient is disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements and exertions; the second ingredient is *de facto* inability to earn wages, as evidenced by proof that claimant has not in fact earned anything. [*Id.*, at § 57.10, 10–4].

■ We conclude that the appellant was entitled to have his evidence concerning his loss of ability to earn to be submitted to the jury and that it was error to deny the appellant the opportunity to have that evidence considered by the jury in determining the degree of permanent partial disability.

## 2.

Appellees in their brief concede that there is no question that a comparison of the amount of money earned by an employee before and after an injury is probative of the effect of that injury on the employee's wage-earning capacity. There is also no question that a determination of an employee's industrial loss for an "other cases" injury, as defined by § 36(4)(a) of Art. 101 of the Maryland Code, is essentially a determination of loss of wage-earner capacity. *Queen v. Agger,* 287 Md. 347, 412 A.2d 733 (1980); *Giant Food, Inc. v. Coffey,* 52 Md.App. 572, 451 A.2d 151 (1982).

Appellees further concede that the appellant's testimony on his earnings at the time of the injury on October 2, 1975 would have been probative of the extent of his permanent disability. Having made these concessions they argue that the jury did not need the evidence to reach its conclusion because it found the appellant to be permanently and totally disabled.

In essence, the appellees agree that the trial court erred in rejecting appellant's evidence as to prior and post-accident earning and seek to avoid reversal on the ground of

harmless error. We do not agree that the error was harmless. The jury had before it the extremely difficult task of determining what portion of the permanent partial disability of the appellant was chargeable to the prior injury of the appellant, what portion was chargeable to the accident of October 2, 1975, and what portion was chargeable to extraneous causes.

The evidence as to appellant's earnings was probative and material and to exclude it on the basis that it might arouse undue sympathy for the appellant was not permissible. It is obvious that an employee's ability to work is one of the elements of industrial loss which the jury was required to consider in arriving at its conclusion as to the extent of a claimant's disability and a fair assessment of the disability sustained by the claimant. Logically, therefore, an employee's ability to work necessarily requires that the trier of the facts be permitted to consider among other facts the amount of wages the claimant earned both before and after the accident. When the trial court for impermissible reasons deprives the jury of this opportunity we conclude it has committed reversible error.

JUDGMENT REVERSED, REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR NEW TRIAL. COSTS TO BE PAID BY APPELLEES.