649 A.2d 1179

**Anne M. RALPH**

v.

**SEARS ROEBUCK & COMPANY, et al.**

**No. 270, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 1, 1994.

388

Bruce M. Bender (Rena W. Heneghan and Van Grack, Axelson, Williamowsky & Jacobs, P.C., on the brief), Rockville, for appellant.

Allan H. Kittleman (Herwig & Humphreys, on the brief), Baltimore, for appellees.

Argued before ALPERT, WENNER and DAVIS, JJ.

ALPERT, Judge.

This appeal arises from a Workers' Compensation claim for permanent partial disability benefits resulting from injuries sustained by Calvin T. Ralph (claimant), the deceased spouse of appellant, Anne M. Ralph. The Workers' Compensation Commission denied permanent partial disability benefits to Mrs. Ralph, finding that claimant had not reached maximum medical improvement prior to his death from non-injury related causes.[1] This decision was appealed to the Circuit Court for Montgomery County, and a motion for summary judgment was granted for appellees, Sears Roebuck & Co. and Allstate Insurance Co. (employer/insurer), and denied to appellant. This appeal followed. As restated by us for clarity, appellant asks:

> Did the trial court err in granting summary judgment when disputes of material fact existed and when granting summary judgment was either based on weighing the credibility of the evidence, or by making an erroneous determination as to substantive Maryland law (i.e., that posthumous permanent disability ratings are not permitted)?

We answer in the affirmative and therefore reverse.

### Facts and Proceedings

Calvin T. Ralph (claimant) sustained an injury on February 20, 1991, while working for appellee employer, Sears Roebuck

---

1. Claimant died of colon cancer prior to having a hearing on the nature and extent of permanent disability.

& Co. He had arrived at a customer's home for the purpose of repairing a clothes dryer, and when he proceeded to the backyard in order to inspect the dryer's vent, he slipped and fell on some wet leaves on the homeowner's patio steps. As a result of his fall, claimant sustained a severe back injury, necessitating his visits beginning on March 1, 1991, to Dr. Harikant Shah, an orthopedic physician.

Dr. Shah took x-rays, performed CAT scan studies, and EMG and nerve conduction studies. Claimant complained he was in considerable pain and discomfort, he had difficulty walking, and he was unable to sit or stand for extended periods. Dr. Shah initially prescribed medication and declared him to be "off work at this time, indefinitely...."

Employer's insurer began voluntarily paying claimant temporary total disability benefits.[2] Claimant continued to see Dr. Shah for his injury and he initiated a Workers' Compensation claim on April 15, 1991. Several months later, in early June, 1991, Dr. Shah recommended that a lumbar myelogram be performed on claimant in order to confirm the precise nature of his injury. Another physician, Dr. Nathan Moskowitz, concurred in this recommendation after performing a neurosurgical consultation on claimant on June 3, 1991. An independent medical examination was performed by Dr. Herbert Joseph on behalf of employer/insurer on June 4, 1991. Dr. Joseph felt that claimant would be able to return to work within two to four weeks of treatment consisting of mobilization and work hardening,[3] and therefore, employer/insurer refused to authorize the lumbar myelogram. Dr. Shah felt

---

**2.** These benefits were paid from March 1, 1991 until claimant's death on November 9, 1991.

**3.** "Work hardening" is defined as

[a] series of conditioning exercises that an injured worker performs in a rehabilitation program. These are designed to simulate the functional tasks encountered on the job to which the individual will return.

Taber's Cyclopedia Medical Dictionary 2165 (17th ed. 1993).

that Mr. Ralph was not a candidate for work hardening due to his inability to tolerate bending, sitting, or standing.

Claimant continued to see Dr. Shah every few weeks. In his notes of June 21, 1991, Dr. Shah indicated that he found claimant "totally disabled for any gainful employment" and prescribed only moist heat, hot showers, and rest at home. Thereafter, Dr. Shah continued to prescribe pain medication and advised claimant to continue heat and hot showers, to perform no lifting, and to do isometric exercises. Claimant remained in severe pain and discomfort. In late June, claimant began having stomach pains and in August, 1991, he was diagnosed with colon cancer. Claimant died of colon cancer on November 9, 1991.

On April 21, 1992, claimant's widow, appellant, pursued his claim for permanent disability benefits, requesting a hearing on the nature and extent of Mr. Ralph's disability. A hearing was conducted on March 30, 1993. The evidence produced at the hearing included Dr. Shah's notations from June 21 about Mr. Ralph's treatment. There was also evidence offered in the form of a note from Dr. Shah to appellee insurer from that same date, in which the doctor concluded, "Whether [Mr. Ralph] be a candidate for a lighter job schedule is always a possibility, but at this time I do not feel that he is ready for that either." In his affidavit, Dr. Shah explained the apparent ambiguity between his notes of June 21, and his letter to insurer:

6. [I]t was my opinion as to a reasonable degree of medical certainty or probability within my field as an orthopedic surgeon that as of June 21, 1991, Mr. Ralph was totally disabled from any gainful employment and could not ever return to gainful employment as a result of his work related injury of February 20, 1991

\* \* \* \* \* \*

8. What I was expressing in said statement [to insurer] was that anything is possible, but by no means did I express an opinion to a reasonable degree of medical certainty that Mr. Ralph would be a candidate for a lighter job schedule

sometime in the future. I was simply speculating by stating that anything may be possible, but I did not feel Mr. Ralph would ever work again.

9. That I further believed that Mr. Ralph reached maximum medical improvement on June 10, 1991, after further diagnostic studies were refused by the insurance company.

10. That at no time did Mr. Ralph's condition regarding his ability to return to work change. It is my opinion to a reasonable degree of medical probability that from June 10, 1991 throughout the rest of Mr. Ralph's life that he was unable to return to any gainful employment because of his work related injuries and was permanently totally disabled from working.

Further, in his report dated March 9, 1992, Dr. Shah opined that claimant had a 50 percent permanent partial disability in the lumbar spine, total body disability of 40 percent, and disability to return to his previous job at 100 percent.[4] This evaluation of impairment was based on the American Medical Association's guidelines.

Additionally, claimant's internist, Dr. G. Peter Pushkas, in a report also prepared after claimant's death dated October 28, 1992, indicated that his patient had an "obvious inability to move freely because of persistent severe back pain." Dr. Pushkas concluded that it was his "medical opinion that [claimant's] back pain and lower extremity pain/weakness was entirely related to his injury and could not possibly be explained by his intra-abdominal malignancy. Even after the finding of the disease and his surgery, a significant proportion of his problems were directly related to his job related injury."

The Commission issued an Order on April 20, 1993, finding that Mrs. Ralph, although an eligible plaintiff, was not entitled to any permanent partial disability benefits because claimant had not reached maximum medical improvement prior to his death. Mrs. Ralph appealed the Commission's finding to the

---

4. It is important to note that this rating of claimant's disability occurred after claimant's death, not before.

Circuit Court for Montgomery County, naming as defendants her husband's employer, Sears Roebuck & Co., and their insurance carrier, Allstate Insurance Co.

Cross-motions for summary judgment were filed by both sides, and oral argument was heard on October 13, 1993. In Mrs. Ralph's motion, she asked the court to find that Mr. Ralph had, as a matter of law, reached maximum medical improvement prior to his death. This motion was denied, the court finding that there was a genuine dispute of material fact as to whether Mr. Ralph had reached maximum medical improvement. The judge granted appellees' motion for summary judgment, however, holding that as a matter of law, there could not have been enough evidence for a decision to be made as to industrial loss of use.

Mrs. Ralph filed a Motion to Alter or Amend Judgment, arguing that a determination of the claimant's industrial loss of use could be made based upon the undisputed medical facts in the record and, at minimum, the various medical records in evidence on the issue of claimant's ability to return to work were ambiguous, thereby creating a dispute as to a material fact whether Mr. Ralph could have ever returned to work. This motion was denied on November 26, 1993, and the decision granting appellees' cross-motion for summary judgment was affirmed. This appeal followed.

## Workers' Compensation Law and Procedure

A brief explanation of some basics of workers' compensation law is necessary in order to understand the critical issues in this case. Workers' Compensation benefits exist to mitigate the economic loss confronted by a worker who is injured on the job. R. Gilbert & R. Humphreys, *Maryland Workers' Compensation Handbook,* § 9.0 (1988). One type of benefit available is for disability, and disability benefits are granted to provide compensation for lost wages or loss of earning capacity that results from accidental injuries or occupational diseases. *Id.* at § 9.0–2. Disabilities are classified into several

categories, including: temporary partial,[5] temporary total,[6] permanent partial,[7] and permanent total.[8] *Id.*

Temporary disability benefits are properly awarded until the point that an injured employee is restored as far as possible given the permanent character, if any, of his injuries. *Alexander v. Montgomery County*, 87 Md.App. 275, 285, 589 A.2d 563 (1991) (citing *Jackson v. Bethlehem–Fairfield Shipyard, Inc.*, 185 Md. 335, 339, 44 A.2d 811 (1945)). Thereafter, permanent disability benefits may be awarded. In order to determine at what point permanent disability is allowed, the time of an injured employee's "maximum medical improvement" must be ascertained. *Alexander*, 87 Md.App. at 286, 589 A.2d 563. "Maximum medical improvement" is reached when the injured employee is at a point of stability and has received the maximum benefit of interventional medical care. *Id.* at 279, 589 A.2d 563. When an employee has reached maximum medical improvement, a doctor can then evaluate the nature and extent of the impairment to determine industrial loss of use of the employee's body.

Section 9–627 of the Labor & Employment Article classifies the body into two categories for purposes of award-

---

**5.** Temporary partial disability is less than temporary total disability. Gilbert & Humphreys, § 9.2. It results when an accidental injury befalls an employee, precluding the employee from working full-time at his or her job or forcing the employee to work at a different job for a lower wage than he or she earned before the injury. *Id.*

**6.** Temporary total disability benefits are available to employees during the healing period when the employee is completely disabled and unable to work as a result of the injury. Gilbert & Humphreys, § 9.3. "Back injuries present a typical injury which results in temporary total disability." *Id.*

**7.** Permanent partial disability is considered "partial in character but permanent in quality." Gilbert & Humphreys, § 9.4. There are three classifications of permanent partial disability, two which will be discussed *infra text*. These include: "specific injuries," "other cases," and "serious disability." *Id.*

**8.** Permanent total disability is the incapacity of the employee to do any work of any kind for which a reasonable market exists. Gilbert & Humphreys, § 9.5.

ing permanent partial disability. Md.Code Ann., Labor & Empl. § 9–627 (1991). One category is "scheduled members," and the other is "other cases." Since back injury does not appear under the list of "scheduled members," it fits within the "other cases" category for these purposes.

In order to award compensation in claims of "other cases" injuries, the Workers' Compensation Commission must determine the percentage of industrial loss of use of the employee's body that was attributable to the injury.[9] Gilbert & Humphreys, § 9.4–2. In *Hall v. Willard Sand and Gravel Co.*, 60 Md.App. 260, 264, 482 A.2d 159 (1984), this Court found that, under former Md.Ann.Code. art. 101, § 36(3)(j) (1957),[10]

> [t]he difference between wages earned by a claimant at the time of an accident and the post-injury earnings of the injured employee is one of several relevant factors which a trier of fact may consider in deciding the amount of loss of industrial use of an employee who has suffered permanent partial disability.

In addition to post-injury earnings, other relevant factors for evaluating disability in "other cases," and ascertaining an employee's industrial loss of use of the body include:

1. physicians' opinions on medical disability;

2. the claimant's occupation;

3. the relationship between the physical disability caused by the injury and the activities, duties and requirements of the claimant's occupation;

4. the claimant's occupational experience and work history;

5. the claimant's level of training ...

---

**9.** *Other cases.*—(1) In all cases of permanent partial disability not listed in subsections (a) through (j) of this section, the Commission shall determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.
Md.Code Ann., Labor & Empl. § 9–627(k).

**10.** Article 101 was repealed by Acts 1991, ch. 9, § 1, effective October 1, 1991. The Labor & Employment Article of the Annotated Code codified the pertinent parts of this article.

6. the claimant's age....

Gilbert & Humphreys, § 7.4.

In the case *sub judice,* Mr. Ralph suffered a lower back injury after falling during the course of his employment. Lower back injuries are considered "other cases" for purposes of workers' compensation. Mr. Ralph's employer/insurer voluntarily paid him temporary total benefits from the time of his accident up until the time of his death. Mrs. Ralph's claim which she appealed was for permanent partial disability payments, from the time she asserts Mr. Ralph reached maximum medical improvement until the time of his death.

## Discussion

Appellant first contends that the trial court erred in granting appellees' summary judgment motion because numerous disputes of material fact existed. First, there was a dispute as to whether Mr. Ralph had reached maximum medical improvement prior to his death. Second, there was a dispute as to whether Mr. Ralph could have returned to work following his injury. Third, a dispute existed over whether Mrs. Ralph could provide the evidence necessary to support a claim for industrial loss of use. Because of these genuine disputes of material fact, appellant asserts that appellees' summary judgment motion was improperly granted.

Appellees concede that there was a genuine dispute as to whether Mr. Ralph had reached maximum medical improvement prior to his death, and explain that this is why Mrs. Ralph's summary judgment motion was not granted. Appellees argue that their motion, however, was properly granted because the judge found that it would be impossible for Mrs. Ralph to produce "the necessary evidence to make a determination on the [c]laimant's industrial loss of use," thus, there was no genuine dispute of a material fact.

The standard by which this Court must review the granting of a summary judgment motion is first, to determine whether there were any genuine disputes of material fact and if not, then to determine whether the moving party was

entitled to judgment as a matter of law. *Eastern Savings Bank, F.S.B. v. Nardo,* 85 Md.App. 702, 708, 584 A.2d 1301 (1991). All inferences must be resolved in favor of the non-moving party. *Id.*

The summary judgment motion granted by the lower court was on the issue of whether Mrs. Ralph could produce enough evidence to prove industrial loss of use, even assuming *arguendo* that Mr. Ralph had reached maximum medical improvement prior to his death. Appellant points out that it appears the lower court did one of two things in granting appellees' summary judgment motion; either the judge weighed the evidence before her and found that there was not enough to prove Mrs. Ralph's claim, or, she made a legal decision that posthumous permanent disability ratings were inadmissible.

It is erroneous for the lower court judge to weigh the evidence before her to make a determination that involves a genuine dispute of material fact. *See Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A.2d 563 (1956) (holding that where the record shows a genuine conflict, the court may not attempt to decide any issue of fact or of credibility). The evidence before the judge consisted of conflicting opinions of medical experts on the nature and extent of claimant's disability, including reports made prior to claimant's death and determinations made after his death. Whether this evidence supported Mrs. Ralph's claim is a question for a factfinder.

Because it appears from the record that the lower court judge did not make a ruling on the credibility of the evidence, we must address appellant's second contention, that the judge's ruling was based on her belief that because claimant had passed away prior to any adjudication of his benefits, Mrs. Ralph could not produce the required evidence to support her claim. The judge explained:

The respondent also has filed a Motion for Summary Judgment based on the legal position that on the circumstances and facts of this record there could not be· before the Commission, because of what happened and how it hap-

pened and the timing and the fact that hearings were never held, there cannot be the necessary evidence presented by the claimant before a commission to show industrial loss of use as it relates to the back injury because what would have to be done was not able to be done prior to Mr. Ralph's death, and both claimant and respondent cite to the same cases, the Richardson case and the Thomas case, as being supportive of each position.

I have reviewed those cases, and I think the rulings in those cases support the position of the employer in this particular case, this being very fact-specific just to the circumstances which arose and the timing of how it arose and what had occurred before Mr. Ralph's death, and I am going to make a finding and a ruling that as a matter of law, in this case I don't see how there could be presented the necessary evidence for a decision to be made as to industrial loss of use, which I think is required in this case before there could have been a determination made that the claimant was seeking, and therefore, I am going to grant the respondent employer's Motion for Summary Judgment in the case.

■ Appellees argue that since the judge clearly stated that she felt that their position was supported by the case law, she accepted the argument in their cross-motion for summary judgment, specifically that: (1) posthumous medical opinions on maximum medical improvement and permanent partial impairment cannot be used to support a finding of industrial loss of use of the body; (2) there was no prior testimony by claimant or opportunity for appellee to cross-examine him prior to his death; and (3) there was no evidence at all of the claimant's loss of earning capacity. We shall address each issue separately, explaining why we disagree with appellees' argument and the granting of their summary judgment motion.

### Posthumous Medical Opinions

■ In the case *sub judice,* Dr. Shah formally rated the permanency of Mr. Ralph's injuries subsequent to his death.

An informal rating, however, was made prior to Mr. Ralph's death. As noted earlier, Dr. Shah's notes of June 21, 1991, evaluated the claimant as being "totally disabled for any gainful employment." Read in the light of his affidavit, those notes appear to be an informal disability rating. Appellant argues that in order to recover permanent partial disability benefits, it is not required that a rating of the extent and permanency of an employee's injuries be done prior to his death. Appellees disagree, contending that posthumous medical opinions are based purely on speculation and conjecture and, therefore, cannot be used as evidence of the permanency of the disability. Further, appellees posit that without the opportunity to examine claimant prior to death but after the point of reaching maximum medical improvement, a physician "cannot possibly formulate a competent and reliable opinion regarding the extent of the permanent physical impairment which is due to the accidental injury."

Both parties rely on *State Dept. of Motor Vehicles v. Richardson*, 233 Md. 534, 197 A.2d 428 (1964), the only Maryland case to address issues close to those in this appeal. *Richardson*, however, is not completely on point. In *Richardson*, the claimant suffered injury to his foot during the course of employment with the Motor Vehicles Administration and was awarded temporary total disability. *Id.* at 536, 197 A.2d 428. While his claim for permanent partial disability was pending, he died from non-compensable causes. *Id.* Mrs. Richardson (the claimant's widow) and her son, administrators of claimant's estate, were substituted for claimant in the proceeding to determine permanent partial disability. *Id.* The issue before the court was whether the claim for permanent partial disability was abated due to claimant's death prior to the determination of an award by the Commission. *Id.* at 537, 197 A.2d 428. The Court of Appeals held that the claim was not abated by claimant's death, deciding that the evidence available was sufficient to enable the Commission to make an intelligent award of benefits. *Id.* at 542, 197 A.2d 428.

The parties disagree in their understanding of the *Richardson* case, appellant arguing that it stands for the proposition

that employees need only reach maximum medical improvement prior to the award of posthumous benefits, and appellees asserting that it requires that an employee must also have obtained a permanency rating prior to death. We do not read *Richardson* as affirmatively requiring that a permanency rating be given prior to death; thus, we disagree with appellee and the lower court's decision to that effect.[11]

The Court of Appeals began in *Richardson* by explaining that Maryland law would follow the line of cases in which workers' compensation awards were sustained when the claimant had filed a claim but died from non-compensable causes before a hearing could be held. *Richardson*, 233 Md. at 540, 197 A.2d 428. "[W]e believe that the Legislature did not intend to condition the right to an award under Sec. 36(4)(c) 'upon the mere happenstance of whether the injured employee's claim petition was decided before or after he died.'" *Id.* (quoting *Cureton v. Joma Plumbing & Heating Co.*, 71 N.J.Super. 249, 176 A.2d 799 (1962), *rev'd*, 38 N.J. 326, 184 A.2d 644 (1962)). The Court went on to explain that "[t]hese are matters which the Commission may not be able to control, and which the injured employee surely cannot. The dependents of the deceased claimant should not be penalized on the basis of whether or not the Commission has been able to hold a hearing and make an award before the claimant's death." *Id.*, 233 Md. at 540–41, 197 A.2d 428.

There were several differences between the evidence before the *Richardson* court and that in the case *sub judice*. First, the extent of Mr. Richardson's disability was rated by doctors prior to his death. *Id.* at 542, 197 A.2d 428. Second, before Mr. Richardson's death, there had been a hearing to determine temporary total disability benefits from the same accident. *Id.* At that time, there was opportunity for cross-examination of the claimant. *Id.* In the case before us, Mr. Ralph's disability was formally rated by doctors after his death and informally before his death, and there had been no

---

11. Even if that was the law, here there was an "informal" rating prior to death. *See* note 11, *supra*.

prior hearing to determine temporary total disability, thus, no opportunity for examination of the claimant. It must be recognized, of course, that direct and cross-examination with regard to temporary total disability may be quite different than that which is required in deciding permanent total or partial disability. Another difference pointed out by appellee is that Mr. Richardson's injury was a "scheduled member," whereas Mr. Ralph's is classified as under "other cases."

The Court of Appeals, in *Richardson*, determined that there was enough evidence under the circumstances of the case from which the Commission could make an intelligent award. They listed all of the evidence that was available, making no statement as to the relative importance of the evidence, and decided that, as a whole, it was enough for a decision to be made. 233 Md. at 542, 197 A.2d 428. Contrary to appellees' assertion, there is no holding in *Richardson* that requires a disability evaluation be performed prior to a claimant's death. Thus, since no Maryland case is precisely apposite, we look to cases in other jurisdictions for instruction on whether posthumous disability ratings should be admitted. We keep in mind that in Maryland, the Workers' Compensation Act has been construed liberally in favor of the employee and his dependents, *Cline v. Mayor of Baltimore*, 13 Md.App. 337, 283 A.2d 188 (1971), *aff'd*, 266 Md. 42, 291 A.2d 464 (1972) (citations omitted).

There are no cases dealing specifically with the admissibility of posthumous disability ratings. Several jurisdictions, however, have awarded posthumous benefits in cases where an action was not initiated by claimant prior to death. *See, e.g., Associated Town "n" Country Builders, Inc. v. Workmen's Compensation Appeal Board*, 95 Pa.Cmwlth. 461, 505 A.2d 1358 (1986), *aff'd*, 515 Pa. 564, 531 A.2d 425 (1987) (hereinafter *Associated*); *Bridges v. McCrary Stone Services, Inc.*, 48 N.C.App. 185, 268 S.E.2d 559 (1980); *Snyder Constr. Co. v. Thompson*, 145 Ind.App. 103, 248 N.E.2d 560 (1969); *Kozielec v. Mack Mfg. Corp.*, 29 N.J.Super. 272, 102 A.2d 404 (1953). Certainly, in cases in which the claimant never had a chance to bring a claim prior to death, there is much less evidence

available than in the instant case. Nonetheless, some courts have allowed benefits despite very little evidence to support the claim.

In *Associated*, 505 A.2d at 1359, the Commonwealth Court of Pennsylvania held that a widow could receive benefits to which her husband/employee would have been entitled for losing his vision in one eye, even though her husband did not file a claim during his lifetime and his death was unrelated to his work injury. There was no mention about when or whether there was a rating of claimant's disability. In *Bridges*, 268 S.E.2d at 560, the employee sustained severe burns over portions of his body, and his employer paid his compensation benefits for the entire period of his temporary total disability. The Court of Appeals of North Carolina held that dependents of an employee who dies of causes unrelated to his injury are entitled to a postmortem award of benefits, and the employee's death did not *ipso facto* reduce the benefits due. *Id.* at 561. The *Bridges* court also did not mention the rating of claimant's injuries, but noted that the Commission used photographs of the claimant, post-injury, to evaluate the amount of disfigurement. *Id.*

In *Snyder Constr.*, 248 N.E.2d at 564, the Appellate Court of Indiana held that a dependent of a deceased employee could maintain a separate action for workers' compensation disability benefits despite the fact that no claim had been pending and no award had been disbursed at the time of the employee's death from causes unrelated to his injury. The *Snyder* court did not mention when or whether claimant's injury was actually rated, but it indicated that claimant's wife substantiated her allegation of permanent partial impairment by providing expert testimony by a neurological surgeon. *Id.* at 563. The Full Industrial Board (Indiana's equivalent of the Workers' Compensation Commission), on the evidence submitted, was able to find that, at the time of death, claimant "had reached a permanent and quiescent state and that [ ] decedent had sustained forty percent permanent partial impairment of the body as whole as a result of the accidental injury." *Id.* at 564.

Additionally, the County Court of New Jersey held in *Kozielec,* 102 A.2d at 405–06, that the surviving wife of an injured employee may recover permanent disability benefits even when the injured workman failed to file such petition and his death resulted from a cause wholly unrelated to the industrial accident from which injury resulted. The court, in *Kozielec,* made no reference to whether any rating of claimant's impairment was made; rather, it explained the evidence that was available and determined, using that evidence, the percentage of claimant's disability. *Id.* at 410–11.

Appellant cites *Adzima v. UAC/Norden Division,* 177 Conn. 107, 411 A.2d 924, 929 (1979), a case in which the Supreme Court of Connecticut denied recovery to an employee's widow who claimed benefits for her deceased husband's back injuries, finding that the widow did not sustain her burden of proving that the employee's back injury had reached maximum improvement prior to his death. The court did, however, allow testimony by plaintiff's medical expert that tended to show that he had reached a state of maximum improvement. *Id.* The *Adzima* court also made no mention of whether or when claimant's disability was rated. Appellees point to the case of *McCurdy v. State,* 227 Conn. 261, 630 A.2d 64 (1993), arguing that the Supreme Court of Connecticut later held "that permanent partial disability benefits with regard to a back injury could be awarded posthumously where the employee had reached maximum medical improvement, obtained a permanent impairment rating *and* requested a permanent disability award *prior* to his death." Appellees misconstrue the holding of this case. In *McCurdy,* the claimant was injured and received temporary total disability benefits from his employer until his death. Prior to his death, his physician declared that he had reached maximum medical improvement and issued a permanent partial impairment rating. *Id.* at 65. The Commission, however, refused to incorporate the rating of claimant's permanent partial disability and the opinion that the claimant had reached maximum medical improvement with reference to his low back injury prior to his death. *Id.* at 67. The Supreme Court of Connecticut held that the Commission-

er should have included this information in his factual findings and that the Commissioner did not have the discretion to deny an award when that information was undisputed. *Id.* The court never held that it was a prerequisite to recovery that a permanent partial impairment rating be made prior to death; rather, it merely held that the evidence before the Commission supported the awarding of benefits. *Id.* In the case *sub judice,* it is for the finder of fact to weigh the evidence offered by Mrs. Ralph to determine whether there is enough credible evidence to support an award. Thus, summary judgment is inappropriate.

We hold that posthumous disability ratings may be used as evidence in workers' compensation cases. Therefore, in this case, summary judgment could have been properly granted only if there were other crucial pieces of evidence that Mrs. Ralph could not present.

### No Prior Testimony or Opportunity for Cross–Examination

■ Appellees also contend that, because Mr. Ralph did not testify prior to his death, they were deprived of the opportunity to cross-examine him and the factfinder would be unable to review prior evidence or testimony. This, appellees assert, distinguishes the case *sub judice* from *Richardson.* In *Richardson,*

> [t]he appellant also contend[ed] that no award could be made ... since there was 'no interrogation of the claimant, no cross-examination, no observation of him by the Commission, in truth, no way to fairly and accurately evaluate his disability.'

233 Md. at 542, 197 A.2d 428. Despite the absence of interrogation and cross-examination of claimant, the court still awarded benefits to Mrs. Richardson. They held that under the facts of that case, there was no problem of adequate proof because

> [t]he claimant, prior to his death, had filed a claim describing his injuries and disability, and he had been examined

and the extent of his disability rated by doctors; hospital records were available, and the Commission had the benefit of evidence introduced at the prior hearing to determine temporary total disability from the same accident, at which time there was opportunity for cross-examination of the claimant.

233 Md. at 542, 197 A.2d 428.

It is true that in the case *sub judice* the Commission did not have the benefit of evidence from a prior hearing because claimant never had or required a hearing to determine his temporary benefits. Appellees had voluntarily paid claimant's temporary benefits, obviating the need for a prior hearing. But again, *Richardson* does not mandate that all of the evidence it had before it in that case must necessarily be available in order to support a claim. Here, it is clearly impossible for Mrs. Ralph to produce evidence from a prior hearing when no such hearing was had, nor was it even necessary. As "[t]he dependents of the deceased claimant should not be penalized on the basis of whether or not the Commission has been able to hold a hearing and make an award before the claimant's death," *Id.* at 540–41, 197 A.2d 428, neither should they be penalized because the employer and insurer did not have the opportunity to cross-examine the claimant and otherwise review prior evidence or testimony. Enough other evidence exists from which a determination of benefits may be made.

### No Evidence of Loss of Earning Capacity

Appellees argue additionally that Mrs. Ralph can produce no evidence of a loss of earning capacity due to Mr. Ralph's injuries, thus, no finding of industrial loss of use can be made, because "[a] finding of industrial loss under ... [other cases] is equivalent to a finding of loss of earning capacity." *Giant Food, Inc. v. Coffey,* 52 Md.App. 572, 578, 451 A.2d 151, *cert. denied,* 295 Md. 283 (1982). Appellees explain that the fact that Mr. Ralph's injury was not a "scheduled member" makes the lack of evidence of loss of earning capacity fatal to Mrs. Ralph's case. They contend

that most of the cases from other jurisdictions that have allowed recovery in cases such as this one involved injuries to "scheduled members." We see no merit in this distinction.

The difference between "scheduled members" and "other cases" injuries is that for "scheduled member" parts of the body, the General Assembly has ascribed a specific value and certain guidelines and minimum compensation levels. Gilbert & Humphreys, § 7.3. For "other cases," a claimant's disability is evaluated in accordance with the relationship between the disability and the worker's loss of use of the body. *Id.* at § 7.4. Thus, the employee's industrial loss of use of the body must be ascertained by weighing certain factors. Post-injury wages are one factor that may be considered when benefits for "other cases" injuries are sought. If Mrs. Ralph's evidence is to be believed, Mr. Ralph would have had no post-injury wages at all, because Dr. Shah found a one-hundred percent disability due to the work-related injury and opined that claimant would never have returned to work.

Appellees contend that the strongest evidence of an effect on earning capacity is the comparison of pre-injury wages to post-injury wages. (Citing *Hall,* 60 Md.App. at 265, 482 A.2d 159). Since claimant was temporarily totally disabled until his death, appellees argue that the Commission would not be able to determine the actual impairment of his earning capacity.

In *Hall,* the court said that the difference between pre- and post-injury earnings "is one of several relevant factors which a trier of fact *may* consider in deciding the amount of loss of industrial use of an employee who has suffered permanent partial disability." 60 Md.App. at 264, 482 A.2d 159 (emphasis added). The court never said this factor *must* be considered. Thus, appellant's inability to produce evidence of Mr. Ralph's post-injury wages should not defeat her claim for benefits. Again, Mrs. Ralph produced evidence from which it could be determined that claimant would have had no earning capacity after his injury. The weight this evidence should be given is left for the trier of fact.

## Conclusion

Construing all inferences in appellant's favor, we hold that there is a genuine dispute as to material facts concerning the evidence to support the claim for permanent disability benefits. Thus, the granting of appellees' summary judgment motion was improper.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THE OPINION; APPELLEES TO PAY THE COSTS.